## NORMAN *v.* CITY OF MOULTRIE.

1. "Ordinarily, the question of benefit, whether general or special, is concluded by a distinct legislative declaration specifically authorizing the improvement; but where by its charter a municipal corporation is authorized generally to pave the public streets, and charge against the abutting landowners proportionate shares of the cost of such improvement estimated upon the front-foot rule, if, in the assessment for a given improvement, there be such a gross disproportion between the sum assessed against the particular lot owner and the value of his abutting lot as that, if the municipal corporation be permitted to proceed with its collection, such action would amount to a virtual confiscation of the landowner's property, the assessment cannot be upheld as a valid exercise of the power conferred; and a court of equity will enjoin the collection of the sum so assessed." But in the instant case the pleadings show that the cost of the pavement in front of the abutting property belonging to the plaintiff in error did not exceed the value of the property with the improvements thereon, so as to make the assessment levied so excessive as to render it void.

   (*a*) Applying to the facts of this case the rulings in *Hardwick* v. *Dalton*, 140 *Ga.* 633, the court below did not err in dismissing the affidavit of illegality on demurrer.

2. The facts stated in the fi. fa. and levy show on their face that this is a proceeding in rem.

3. The following description contained in the fi. fa. and levy is not open to the objection that it is void as being too indefinite:  "You are hereby commanded that of the goods and chattels, lands and tenements of John M. Norman, one lot in block 71, city lot No. — in the said City of Moultrie, said State and County, commencing at a point 75 feet from the N. E. corner of Fifth Avenue and Third Street S. E., and measuring and abutting 75 feet on the North side of Fifth Avenue S. E., between First Street S. E. and Tenth Street S. E., and running back its full width 150 feet in a northerly direction."

4. The assessment against the abutting property of the plaintiff in error is not invalid because the defendant in error failed to pave the right of way of a certain railroad which crosses the street paved.

5. The court below did not err in sustaining the demurrer to the affidavit of illegality as amended, and in dismissing the same as being insuffi-

cient in law to constitute a defense against the execution levied in the present case.

No. 3750.  JANUARY 23, 1924.

Affidavit of illegality of execution.  Before Judge W. E. Thomas. Colquitt superior court.  April 2, 1923.

*Kline & Moore,* for plaintiff in error.

*P. Q. Bryan,* contra.

HILL, J.  The City of Moultrie adopted an ordinance having for its purpose the paving of a certain street in that city, and making certain assessments against the property abutting thereon; and an execution was issued and levied on certain real estate of John M. Norman, the plaintiff in error, which abutted on said street. Norman filed an affidavit of illegality.  Later he filed three amendments to the affidavit, which were allowed by the court.  The City of Moultrie filed demurrers, general and special.  The court below sustained the demurrer and dismissed the affidavit of illegality as amended, "as insufficient in law to constitute a defense against the execution complained of."  To this ruling Norman excepted.

The only questions that need to be considered in the present case are those raised by the amendments to the affidavit of illegality.  The original affidavit of illegality is the same as that filed and passed upon in the case of *Horkan* v. *City of Moultrie,* 154 *Ga.* 444 (114 S. E. 888).  The rulings in that case are controlling here as to the questions raised in the original affidavit of illegality.  The questions raised by the amendments to the affidavit of illegality are as follows:  (1) The assessment against the property of the plaintiff in error is so excessive as to amount to a confiscation of his property.  (2) The execution is issued against the defendant both in personam and in rem.  (3) The description of the property in the fi. fa. is so indefinite as to render it void.  (4) The failure of the City of Moultrie to pave the property of a certain railroad which crosses the street paved rendered the execution invalid as to him.  We will deal with these questions in the order named.

1. The general rule is:  "Ordinarily, the question of benefit, whether general or special, is concluded by a distinct legislative declaration, specifically authorizing the improvement; but where by its charter a municipal corporation is authorized generally to

pave the public streets, and charge against the abutting-land owners proportionate shares of the cost of such improvement, estimated upon the front-foot rule, if, in the assessment for a given improvement, there be such a gross disporportion between the sum assessed against the particular lot owner and the value of his abutting lot as that, if the municipal corporation be permitted to proceed with its collection, such action would amount to a virtual confiscation of the landowner's property, the assessment cannot be upheld as a valid exercise of the power conferred; and a court of equity will enjoin the collection of the sum so assessed." *City of Atlanta* v. *Hamlein,* 96 *Ga.* 381 (2) (23 S. E. 408). In the *Hamlein* case the lot against which an assessment for paving was made was of such shape and dimensions that it abutted upon one street three feet, upon another seven feet, and upon a third four hundred and seven feet, being bounded on the remaining side four hundred and seven feet by the adjoining property in the block; and this long and narrow strip of land had been by the municipal corporation paved along the entire distance of its greatest length, four hundred and seven feet, at an expense, according to the municipal assessment, of $721.28; and the greatest estimated value of the entire property, as improved, was $260. It was held in that case that the facts made such a case of doubtful benefit "and probable spoliation, as that the discretion of the circuit judge in granting an injunction at the suit of the lot owner to stay the collection of the sum assessed until the final trial will not be disturbed." And see the same case, 101 *Ga.* 697 (29 S. E. 14). In the instant case the property of the plaintiff in error abutted on the street paved 75 feet and ran back to a depth of 150 feet. The sum assessed against this property was $538.87. In the amended affidavit of illegality the plaintiff in error alleges that "prior to the laying of the pavement in front of this defendant's property the value of the land, exclusive of the buildings thereon, was $650.00. The value of the land exclusive of the buildings, after the laying of said pavement was, and now is, $750.00, and the cost of said paving being $500.00, therefore the cost of said paving is 66-2/3 per cent. of the value of the land exclusive of the buildings. This defendant says further that said fi. fa. issued and is proceeding illegally, because said paving cost this defendant $500, and the value of said land, including the buildings thereon, by rea-

son of the laying of said paving has only been increased $100, the cost of said paving being $400 in excess of the value of said improvement. The benefit of said improvements being only $100, the excess above the benefits is therefore $400, for which amount this defendant, neither in law, equity, or good conscience is in any wise liable; and this defendant prays that if it is found that he is liable in any amount, that said excess of $400 above the benefits be deducted from said execution. This defendant further prays that the interest on said $400 be likewise deducted. This defendant further says that said execution having issued for $400 in excess of the benefits, the benefits being only $100, the said execution is void. This defendant prays that said execution be declared null and void, and that the levy thereunder be dismissed." It will be observed that the allegation is that the land of the plaintiff exclusive of the buildings is worth $650, and after the laying of the pavement the land exclusive of the buildings is worth $750. It will also be noted that the plaintiff nowhere gives the value of the improvements in the shape of buildings or otherwise which are upon the land.

In the case of *Wing* v. *Macon,* 142 *Ga.* 382 (3) (82 S. E. 1062), it was held: "Where, in an affidavit of illegality filed in resistance to the collection of an execution issued against an alleged abutting owner, to compel the payment of his proportionate share of the expense of laying sidewalks, paving, and curbing, it is alleged that the amount assessed against him is so great that it amounts to a confiscation of his property, this ground of the affidavit is without merit in the absence of some statement showing the value of the property against which the assessment was made, so that the court may compare the amount of the assessment with the value of the property taxed." It will therefore be seen that it will be impossible for this court to say as a matter of law whether the amount assessed by the city against the property of the plaintiff in error is so excessive as to amount to a confiscation of his proprety, unless the whole value of the land, including the improvements, in the way of buildings, is given.

It is further alleged in the amended affidavit of illegality that even though the City of Moultrie made a contract by the terms of which it paid the sum of $3.65 per square yard for said paving, said agreed or contract price was unreasonable and excessive; and

it is alleged that none of the street paving put down by the city for which the fi. fa. in the present case was issued was worth more than $1.65 per square yard, and that any charge more than $1.65 per square yard for paving said street is unreasonable and excessive, etc.   By this allegation it is admitted by necessary implication that some amount not excessive is included in the amount assessed against the property of plaintiff in error.   In such circumstances this court has held:   "Where an affidavit of illegality is filed, by an owner of property abutting on a street, to an execution issued by the City of Dalton according to statute for the grading, paving, and improvement of certain streets within that city, which by necessary implication admits.that some amount is due on the execution, which is not paid to the levying officer as required in the act of 1911 (Acts 1911, p. 1097, et seq.), such affidavit is subject to a general demurrer.   (*a*) An affidavit of illegality which alleges that 'the amount of the execution is excessive' admits by necessary implication that some amount not excessive, included therein, is due.   (*b*) In such a case, before an affidavit of illegality will be received, the amount admitted to be due must be paid to the levying officer.   (*c*) An allegation in an affidavit of illegality that there has been 'included' in the amount for which the execution has issued certain sums alleged to be illegal, necessarily implies that some amount included, which is not illegal, is due; and accordingly such affidavit will not be received until the amount admitted to be due is paid."   *Hardwick* v. *City of Dalton,* 140 *Ga.* 633 (79 S. E. 553).   In the charter of the City of Moultrie (Acts 1913, p. 1062, sec. 3) there is a similar provision, to wit:   "The said City of Moultrie is hereby empowered to enforce payment of the assessments provided for by paragraphs 1 and 2 of this section, by execution against the abutting-property owners and abutting property, which said execution shall be issued and levied like executions for taxes under existing ordinances, or such as may hereafter be made applicable to the subject, and said property shall be sold in the same manner, and shall be subject to all the incidents of purchase by the city and redemption by the owner, etc., as is provided by section 879 et seq., of the Code of Georgia of 1911, and the amendments thereto; provided, however, that to an execution issued under the provisions of this section the defendant shall have the right to file an affidavit

denying the whole or any part of the amount for which execution is issued is due, and the reason why the same is not due, which amount so admitted to be due shall be paid before the affidavit is received, and said affidavit shall be received for the balance, and said affidavit so received shall be returned to the superior court to Colquitt County, and there tried and the issue determined as in cases of illegality, subject to all the pains and penalties provided for under cases of illegalities filed for delay." Under the amended affidavit we hold that by necessary implication the plaintiff in error admits that the paving of the street on which his property abutted was worth $1.65 per square yard, and that to that extent it was not excessive, and that being true, his affidavit could not be received until that amount was paid to the levying officer.

2. It is insisted that the execution in the present case was issued against the defendant both in personam and in rem, and that in addition to issuing the fi. fa. the city caused the same to be recorded on the general execution docket of the county, so that it appears on the docket as a general common-law fi. fa. against the defendant; that it being so issued and so appearing upon the general execution docket injures and damages him, as it affects the title to other property owned by him, and the same appears to be a lien against his other property; and he prays that the same be delivered up and canceled. The fi. fa. in the present case commands "that of the goods and chattels, lands and tenements of John M. Norman, one lot in block 71, city lot No. — in the City of Moultrie, said State and County, [describing the property] . . you cause to be made, by levy and sale, sufficient thereof to make the sum of $538.87." We are of the opinion that both the fi. fa. and the levy show on their face that this is a proceeding in rem; and without deciding whether the defendant in fi. fa. would be personally liable, the fi. fa. calls for a levy only on the property of the defendant which abuts on the street which has been improved, and the levy in the present case also describes that particular property and that only.

3. But it is insisted that the description of the property levied upon in the instant case is not sufficiently definite and certain to form the basis of levy and sale. The execution reads in part as follows: "You are hereby commanded that of the goods and

chattels, lands and tenements, of John M. Norman, one lot in block 71, city lot No. — in the said City of Moultrie, said State and County, commencing at a point 75 feet from the N. E. corner of Fifth Avenue and Third Street S. E., and measuring and abutting 75 feet on the north side of 5th Avenue S. E., between First Street S. E. and Tenth Street S. E., and running back its full width 150 feet in a northerly direction." We are of the opinion that the description of the above property is sufficiently definite, and that it is not open to the objection that it is so indefinite that it cannot be located.

4. It is further insisted that the failure of the City of Moultrie to pave the right of way of a certain railroad which crosses the street paved invalidates the assessment. In *Bacon* v. *Savannah,* 86 *Ga.* 302 (6) (12 S. E. 580), it is held: "Though the statute certainly contemplates that the tracks of street-railroads and a space of two feet on either side thereof shall be paved or macadamized by the companies at their own expense, and abutting owners cannot be required to contribute to the cost thereof, yet a broad street may well admit of general improvement as a system separate and distinct from the macadamizing or paving of the street-railroads located thereon. Where this is so, abutting owners may be required to contribute their proper part to defray the cost of general improvements, whether the special improvement required of railroad companies be made or not." In the case of Springfield *v.* Weaver, 137 Mo. 650 (37 S. W. 509), it was held that where an ordinance requires a street-railway company to pave a certain part of a street occupied by it, the paving of the other part to be paid for by assessment against abutting property, it is no defense to an assessment for paving the part not required to be paved by the railway company that the city did not require the railway company to pave its portion of the street. We think that the failure of the defendant in error to pave the right of way of the railroad which crosses the street in question does not invalidate the whole assessment.

5. The court below did not err in sustaining the demurrer to the affidavit of illegality as amended, and in dismissing the same as being insufficient in law to constitute a defense against the execution levied in the present case.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Gilbert, J., dissenting.*

RUSSELL, C. J., dissenting.   I agree that the ruling in the *Horkan* case, supra, required striking the grounds of the illegality to which it is applicable.  But I think two of the grounds of the affidavit of illegality were good and should have been sustained instead of being dismissed.  I cannot agree to the ruling of the court to the effect that the value of buildings and other improvements upon real estate abutting on a street which is subject to assessment for street improvement should be considered in the determination of whether the assessment is confiscatory.   The improvement of a city street may increase the value of the lot and the building, if it has a building upon it, but the accretion goes entirely to the site of the building—the land itself,—and nothing can possibly be added to the building considered apart from the lot regardless of its original cost, since the building is daily subject to deterioration and periodically expensive for repairs, whether it is situated on a mere trail, or fronts the most modern bitulithic asphalt pavement.  In my opinion the court was right in holding, in *Wing* v. *Macon,* 142 *Ga.* 382 (supra), that an affidavit of illegality, alleging that the amount assessed against the defendant in fi. fa. was so great that it amounted to a confiscation of his property, was without merit unless there was a statement showing the value of the property against which the assessment was made, so that the court could compare the amount of the assessment with the value of the property taxed, and that the value of buildings upon the property was to be included.  This for the very reason stated above, that it is inconceivable how there can be any addition to the value of a hovel by laying a beautiful pavement in front of it, though it can be easily understood how such a pavement would so greatly increase the value of the lot as to render the speedy removal of the hovel most desirable.   On the other hand a palace upon the lot would be worth no more and no less than the amount necessary to build it, or to replace it if it were destroyed.  In fact an examination of the original record discloses that the lot in *Wing's* case was a vacant lot.   The ruling in *Wing's* case is perfectly reasonable, but the word property as used in that case has reference to the lot and not the building.  In the present case the allegation of the affidavit of illegality, in my opinion, is sufficient to comply with the requirement laid down in *Wing's* case; for the value of the lot before the street im-

provement and afterwards are both definitely stated, and I can see no reason why the value of the building would be changed. The allegation is good in my opinion, because the building would be worth, according to the allegation of the affidavit, fifty-six hundred dollars before the street improvement, and afterwards fifty-seven hundred and fifty dollars, which would result in the one hundred dollars as alleged by the affiant as the increased valuation of the property.

Nor can I agree to the ruling contained in the third headnote. In my opinion, "one lot in block 71, city lot number — in the said City of Moultrie, said State and County, commencing at a point 75 feet from the N. E. corner of Fifth avenue and Third street S. E., and measuring and abutting 75 feet on the north side of Fifth avenue S. E., between First street S. E. and Tenth street S. E., and running back its full width, 150 feet in a northerly direction," is so indefinite that the lot cannot be located. I will illustrate by the following diagram:

It must be conceded that there is one thing certain in the description,—the lot in question commences at a point 75 feet from the N. E. corner of Fifth avenue and Third street S. E. That is at the point designated upon the diagram by a cross. It is

further said that the lot abuts 75 feet on the north side of Fifth avenue S. E. between First street S. E. and Tenth street S. E., and runs back in a northerly direction 150 feet. This would put Fifth avenue running east and west and the lot 75 feet wide, and 150 feet deep facing southerly and running northerly somewhere in the range of nine (9) blocks of lots abutting on the north side of Fifth avenue, and the levying officer might find it if he could, if the City of Moultrie is laid off, as is usual, with the streets running consecutively numbered from one to one hundred. But if we assume that there is only one street crossing Fifth avenue from north to south, namely Third street, and that the beginning corner as stated is 75 feet from the N. E. corner of Fifth avenue and Third street S. E., and start to measure the 75 feet which the lot is said to abut on Fifth avenue, in what direction shall we measure, to the east or to the west? If, commencing at the cross, the point 75 feet from the corner, we go 75 feet along Fifth avenue in an easterly direction, the lot sought to be described will be the second lot from Third street, and not the corner lot, designated as number 2. If we begin at the commencing point, the cross, and go toward the west, the lot 75 feet by 150 feet will be the corner lot designated as lot number 1. I think the court might well have held the other grounds of the illegality to be invalid, but that it was error to sustain the demurrer to the ground of the illegality which set up that the description of the lot was fatally defective upon the ground that though the beginning point of the lot was located, there being no direction as to its movement, it could never make a line to enclose the lot, for a line is merely a point in motion. Without some direction given as to whether the commencing point should move easterly or westerly, it is left to guess whether the lot may be number 1 or number 2, for the commencing point, which must move in some definite direction in order to make a line, is stationary forever.