## SHARPE *et al. v.* CITY OF WAYCROSS *et al.*

No. 11940. NOVEMBER 10, 1937. REHEARING DENIED DECEMBER 9, 1937.

*Herbert W. Wilson* and *Harry M. Wilson,* for plaintiffs.

*Frank B. McDonald Jr.,* and *Quillian L. Garrett,* for defendants.

*E. Kontz Bennett,* for persons at interest, not parties.

HUTCHESON, Justice. Mrs. W. W. Sharpe, and other property owners in the City of Waycross brought their petition against the City of Waycross and the marshal thereof, seeking to enjoin sales of their respective properties under levies of executions for collection of paving assessments properly assessed under the act of 1925 (Ga. L. 1925, p. 1557 et seq.), on the grounds that more than seven years had elapsed since the "rendition of the assessments (or judgments)" and "before the paving executions were issued thereon and entered upon the general execution docket;" and because said assessments or judgments were dormant at the time the said

executions issued, and therefore they are null and void. It is further alleged that the portion of section 11 of the act of 1925, as follows: "And it shall be the duty of said treasurer . . on or before the first day of September of each year, in case of a default in payment of such instalment or assessment with interest, to issue an execution against the lots or tracts of land assessed for improvement, or against the party or person owning the same, for the amount of such assessment with interest," is unconstitutional and void as violative of art. 1, sec. 4, par. 1, of the constitution of the State of Georgia (Code, § 2-401), which declares: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case, by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such consent." Also, that said portion of section 11 of the act seeks to empower the City of Waycross to issue an execution after seven years from the assessment made, and therefore said special act conflicts and is in derogation of the Code, § 110-1001, which is as follows: "A judgment shall become dormant and shall not be enforced: 1. When seven years shall elapse after the rendition of the judgment before execution is issued thereon and entered on the general execution docket of the county wherein such judgment was rendered." Also, that said portion of section 11 of the act is in conflict with the following sections of the Code: § 92-7702: "All laws in reference to a period of limitation as to ordinary executions for any purpose, or to the length of time or circumstances under which they lose their lien in whole or in part, are applicable to tax executions." § 3-716. "Any claim or demand held by any municipality, not being in the shape of a special contract, or which shall not have been reduced to execution, shall be barred by the statutes of limitation as provided by the general statutes of limitation of force, and all executions issued by any municipality shall be subject to the same laws as to the statutes of limitations now governing other executions." Petitioners also seek to enjoin the further progress of the executions on the grounds that the City of Waycross has computed compound interest on the principal amounts as set forth in said executions, and

has charged a greater rate of interest on said principal amounts than 7 per cent. per annum. Petitioners allege that "they do not owe the City of Waycross or any other person or persons anything, principal or interest, in virtue of the act." Petitioners then attack that portion of section 10 of the act which reads as follows: "One tenth in amount of any such series of bonds with interest upon the whole series to that date shall be payable on the first day of September next succeeding the maturity of the first instalment of the assessments, and interest, and one tenth thereof with the yearly interest upon the whole amount remaining unpaid shall be payable on the first day of September in each succeeding year until all shall be paid. Such bonds shall bear interest at a rate not exceeding 7% per annum from their date until maturity, payable annually," as unconstitutional and void as violative of art. 1, sec. 4, par. 1, of the constitution (Code, § 2-401), which declares that no special law shall be enacted in any case for which provision has been made by an existing general law, in that the portion of the act referred to is in conflict with and in derogation of laws set forth in the Code, § 92-7601 (relating to interest chargeable on executions for taxes, and assessments for permanent improvements of streets), and §§ 57-108 and 110-304 (relating to interest chargeable on judgments).

Before we go into a discussion of the merits of the case as made by the rulings on demurrer to the petition, we think it advisable that we have before us a picture of the general nature of the act of 1925, supra, pursuant to which the executions attacked were issued. The act is one of those commonly known as "Oklahoma plan baby-bonds" act. It provides a machinery for the paving and improvement of the streets of the City of Waycross at the expense of the property owners, and for the issuing of bonds to secure funds for payment of the improvements. The city by ordinance or resolution declares the necessity of having the work done, and the ordinance or resolution is published and opportunity given for protest by the property owners (§ 3). The expense of the improvements is apportioned among the various abutting-property owners according to the frontage of their respective properties on the street to be improved (§ 4). If no protest is filed to the proposed improvement, or one half of the property owners petition for the improvement, the city shall by resolution express its intention

to proceed with the improvement, such resolution to state the nature of the improvement, the streets to be improved, the terms of the contract for the improvement, etc. (§ 6). As soon as the contract is let, a commission appointed shall "appraise and apportion the cost and expense of the same to the several tracts of land abutting on such improvement." Upon the filing of the report of the commission opportunity to file a protest and be heard is given the property owners. Upon the hearing the city commission shall have the power to correct the appraisement, apportionment, and assessment as made by the commission or confirm the same. "Assessments in conformity to said appraisement and apportionment as confirmed by said city commission shall be payable in ten equal instalments, and shall bear interest at the rate of seven (7) per cent. per annum until paid, payable in each year at such time as the several instalments of the assessments are made payable each year. The said city commission shall by ordinance levy assessments in accordance with the said appraisement and apportionment as so confirmed, against the several tracts of land liable therefor, and shall cause said appraisement and apportionment to be recorded as [on] the mortgage records of Ware County, duly certified as correct by the clerk of the commission; and when so recorded the charges assessed against the various parcels of land shall become a first lien thereon, superior to all other liens except those to the State of Georgia, the County of Ware, and the City of Waycross" (§ 7). The special assessment and each instalment therefor and the interest thereon are declared to be a lien against the lots and tracts of land so assessed, from the date of the ordinance levying the same, coequal with the lien of other taxes and prior to and superior to all other liens against such lots or tracts, and such liens shall continue until such assessment and interest thereon shall be fully paid (§ 9). The property owner has the option of paying his assessment within thirty days in full, and thus avoiding the payment of interest (§ 8). After the expiration of thirty days from the levying of the assessment the city commission shall issue bonds aggregating the amount of the unpaid assessments. "One tenth in amount of any such series of bonds with interest upon the whole series to that date shall be payable on the 1st day of September next succeeding the maturity of the first instalment of the assessments, and interest, and one tenth thereof with the yearly in-

terest on the whole amount remaining unpaid shall be payable on the 1st day of September in each succeeding year until all shall be paid. Such bonds shall bear interest at a rate not exceeding seven (7) per cent per annum from their date until maturity, payable annually" (§ 10). In section 11 provision is made for the issuing of executions to enforce the payment of the instalments as they become due. The assessments in·the present case on each particular piece of property were made by separate ordinances, and the initial due date of the first instalment on all the assessments was by the ordinance levying the assessment made due and payable on August 15, 1928, and were each properly recorded as in the act provided.

■ We will first deal with the attack made on the constitutionality of that portion of section 11 of the act of 1925, which provides for the yearly issuance of an execution over a period of ten years, to enforce payment of the instalments on the paving assessments as they become due. The general laws, the provisions of which it is contended that the special act conflicts with, contrary to the constitutional provision that no special law shall be enacted in any case for which provision has been made by a general law, are found in the Code, § 110-1001, which declares that a judgment shall become dormant if seven years elapse after the rendition of the judgment before execution is issued thereon and entered on the general execution docket, and § 92-7702, which declares that all laws with reference to a period of limitation as to ordinary executions, etc., are applicable to tax executions, and § 3-716, which declares that "all executions issued by any municipality shall be subject to the same laws as to the statutes of limitation now governing other executions." The real question made by this attack on the constitutionality of section 11 of the act of 1925, supra, is whether or not the period of limitation as to dormancy begins to run from the date of the assessment fixing the lien, or from the date provided for the issuance of the execution to enforce the assessment. On the answer to this question depends the constitutionality of the portion of the act of 1925 attacked. It is contended that the executions provided for in the act of 1925 are analogous to tax executions, and therefore that the period of limitation as to tax executions is applicable thereto. The plaintiffs rely on *Lewis* v. *Moultrie Banking Co.*, 36 *Ga. App.* 347 (136

S. E. 554), and *Herring* v. *Citizens Bank of Cairo,* 45 *Ga. App.* 646 (165 S. E. 838). Assuming, but not deciding, that such analogy was properly drawn in those cases, and would also be proper in the instant case, we are of the opinion that nothing in section 11 of the act of 1925, supra, is in conflict with the general laws referred to. The Code, § 92-7701, declares that "all . . city or other tax executions, before or after legal transfer and record, shall be enforced within seven years from the date of their issue; or within seven years from the time of the last entry upon the tax execution by the officer authorized to execute and return the same, if said entry is properly entered by said officer upon the execution docket and books in which said entries are required to be made in cases of entries on executions issued on judgments." Immediately following is § 92-7702, which declares that all laws with reference to a period of limitation as to ordinary executions, etc., are applicable to tax executions. Both of these sections are taken from the act of 1887 (Ga. L. 1887, p. 23). In construing the act of 1887 in its relation to the dormancy judgment act (§ 110-1001, supra) this court, in *Georgia Railroad &c. Co.* v. *Wright,* 124 *Ga.* 596, 623 (53 S. E. 251), said: "Construing this act as a whole, its language indicates that the purpose of the lawmaking power was to place the State [or city], in regard to its claim for taxes, in the same position that a plaintiff in a judgment would be placed as to the enforcement of a right upon which a judgment was founded. While the statute uses the word 'execution,' and not the word 'judgment,' there can be no legitimate escape from the conclusion that the legislative intent was to bring the tax judgment of the State within the dormant-judgment law applicable to cases of individuals. The entries required to be made on tax executions are similar to those required to be made on 'executions issued on judgments.' That the word 'execution' is to be interpreted in the sense of judgment becomes clear when we refer to the statutes evidently referred to by the expression, 'All laws in reference to a period of limitation as to ordinary executions.' The only law to which this expression can apply is the dormant-judgment act embraced in the Civil Code, § 3761 [§ 92-7702], the effect of which is to destroy the lien of the judgment upon which the execution is based by a failure to enforce the execution, and not merely to destroy the execution itself. . . While it is to be conceded that

the act of 1887 does not in terms declare that the judgment in favor of the State for taxes shall become barred, it is necessarily implied; and unless this implication is allowed to operate, the second section of the act is without meaning, and this anomalous situation arises: that the State is barred where its officers do their duty and issue their executions within due time, but fail to have entries made thereon from time to time as required by law, but the State is not barred when there has been either a negligent or a wilful failure on the part of the public officers to discharge their duties under the law. That part of section 3761 [§ 110-1001] which declares that no judgment shall be enforced after seven years from its rendition, when no execution has been issued thereon, is by necessary implication a part of the act of 1887; and hence when the State has failed to issue an execution for taxes *within seven years after the time for the issuing of the execution has arrived,* the claim of the State for taxes is barred, and barred for the reason that in this particular the act of 1887 brings the judgment of the State for taxes within the full operation of the dormant-judgment act." This decision makes it clear that the period of limitation as to tax executions does not begin to run until the date fixed for the issuance of the execution. While, as was said in *Lewis* v. *Moultrie Banking Co.,* supra, "Just as in ordinary suits the lien is created by the judgment and enforced by the execution, so in this case the lien is created by the assessment and enforced by the fi. fa. issued thereon," yet when the dormancy-judgment act is applied in its operation to taxes or paving assessments, the time for issuing the execution is the "judgment" from which the period of limitation begins to run. The Code, § 92-5708, declares that the lien for taxes arises from the time fixed for the valuation of the property for taxation. The act under examination provides that the ordinance fixing the amount of the paving assessment shall constitute the lien. There is nothing in the general laws referred to above which prohibits or is in conflict with the provisions in the act before us, relating to the issuance of executions yearly for a period of ten years for enforcing the instalments of the assessments as they become due. So long as the time for the issuing of the execution has not arrived, the statutes relating to dormancy have no effect upon the life of the lien created by the assessment. See, in this connection, *Heakes* v. *Heakes,* 157 *Ga.* 863, 868 (122 S. E.

777). Section 11 of the act of 1925, supra, is not unconstitutional for any reason assigned.

■ The plaintiffs contend, however, that inasmuch as the executions, the enforcement of which is sought to be enjoined, were not issued yearly as the instalments on the assessments became due, but were issued for the full amount at the end of the ten-year period, those portions of the assessments which remained due and for which no executions were issued and recorded or levied within seven years are now dormant and unenforceable, under the ruling in *Lewis* v. *Moultrie Banking Co.*, and *Herring* v. *Citizens Bank of Cairo,* supra. Whether or not the rule announced in those cases is applicable to each instalment of the assessments in the instant case, or, if applicable, is applicable only when the last instalment becomes due, it is not necessary to decide; this for the reason that there was no tender or offer to pay that portion of the instalments which the petition, in view of the above ruling on the constitutionality of the instalment method of issuing executions, shows to be due and unpaid. See Code, § 37-104; *Wilkinson* v. *Holton,* 119 *Ga.* 557 (46 S. E. 620); *Peoples Credit Clothing Co.* v. *Atlanta,* 173 *Ga.* 653 (160 S. E. 873), and cit.; *Candler* v. *Gilbert,* 180 *Ga.* 679 (180 S. E. 723). It is true that the petition alleges that nothing is owed on said assessments "in virtue of said act;" but, as we have construed the petition on demurrer and the act pursuant to which the executions were issued, the petition as a matter of law shows that the petitioners are obligated to at least that portion of the assessments which became due within seven years of the issuance and levy of the executions and the filing of the instant suit.

■ For the same reasons it is not necessary to pass upon those features of the case relating to usury. *Weaver* v. *Bank of Bowersville,* 146 *Ga.* 142 (90 S. E. 864); *Matthews* v. *Banks,* 146 *Ga.* 732 (92 S. E. 52); *Liles* v. *Bank of Camden County,* 151 *Ga.* 483 (107 S. E. 490); *Latimer* v. *Lyon,* 177 *Ga.* 888 (171 S. E. 562); *Wardlaw* v. *Woodruff,* 175 *Ga.* 515 (165 S. E. 557); *Biggers* v. *Home Building & Loan Asso.,* 179 *Ga.* 429 (176 S. E. 38); *Washington & Lee University* v. *Suburban Development Co.,* 183 *Ga.* 130 (187 S. E. 647). Since the usury allegedly charged is not connected with any contract to take or charge usury, the question whether or not in such a case one would be required to tender the

principal and lawful interest is not a matter for consideration in the present case. See *Nash Loan Co.* v. *Dixon*, 181 *Ga.* 297, 302 (182 S. E. 23), and cit.

 Under the above rulings, the petition failed to set forth a cause of action for the relief prayed for. The court did not err in sustaining the general demurrer and in dismissing the case.

*Judgment affirmed. All the Justices concur, except Russell, Chief Justice, dissenting.*