WEBB *et al v.* CITY OF ATLANTA *et al.*

No. 12221. JUNE 25, 1938. REHEARING DENIED JULY 11, 1938.

*James E. Jackson,* for plaintiffs.

*J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for defendants.

HUTCHESON, Justice. On October 22, 1936, L. K. Webb, J. E. Jackson, and J. E. Jackson Jr., brought a petition against the City of Atlanta and Riley F. Elder as municipal-revenue collector of said city. The petition as amended contained substantially the following allegations: Petitioners are the owners of certain property located on Atlanta Avenue S. E., in said city, which street was paved under a certain plan hereinafter set out. "The City of Atlanta acting under its charter powers as contained in sections 183 and 301(a) [Atlanta City Code, 1924], caused said street to be repaved with a patent pavement known as 'Wilhite paving,' which street was paved during the year 1924, and the resolution accepting said paving on the part of the City of Atlanta was adopted by general council" on November 3, 1924. "That by virtue of the ordinance accepting the pavement as complete the City of Atlanta acquired a lien upon the property of the petitioners, as provided by section 301(s) [Atlanta City Code, 1924], which lien dated from November 3, 1924. Said lien is governed and controlled by sections 304 and 305 of City Code, 1924. Said liens when attached shall be levied and executed under the provisions of section 306 [City Code]. That, pursuant to the further provisions of the charter of the City of Atlanta, said street was paved with 'Wilhite' pavement, notwithstanding a majority of the property owners in number and front footage had requested and signed a petition for concrete paving, and notice of concrete paving was served upon said property owners." The petition for Wilhite paving was circulated and the signatures obtained by a contractor after the bids were advertised for concrete paving, and said Wilhite paving was put down without bid or advertising for bids, and "said method of obtaining petitions is in violation of the charter of the City of Atlanta." Notwithstanding the failure of the city to pave or cause to be paved said street with concrete, petitioners L. K. Webb and J. E. Jackson (acting for his wife, the then owner of certain of said property) agreed to accept said paving upon the assurance of a then member of city council and the then superintendent of construction of the city that said pavement was and would be as satisfactory and permanent as concrete pavement; and L. K. Webb paid, and J. E. Jackson caused Mrs. J. E. Jackson to

pay, one tenth of the assessed cost of said pavement against the respective properties levied upon in the instant case, and signed a series of notes covering the balance of said paving costs. Pursuant to the provisions of the charter, section 301(f), said pavement carried a guarantee by the contractor of workmanship and materials, for a period of five years from the date of completion. Said pavement did not last for the period required by the charter, but cracked and became broken before the five-year period elapsed, and said pavement was not and is not reasonably worth the price charged therefor and which petitioners agreed to pay. The failure of said pavement to remain unbroken and perfect was not the fault of the petitioners. The pavement is not and was not reasonably worth half the amount which the petitioners agreed to pay therefor; and having paid more than half of the agreed price, they have paid more than the pavement is and was worth.

Petitioners allege that they had a right to rely upon the statement of the superintendent of construction of the city, who by virtue of his office was in position to know the respective qualities of street-paving materials, or should have known them, and the failure of said paving to hold up "was a latent defect which could not be ascertained by defendants at the time they agreed to accept said paving in lieu of concrete paving, and that said latent defect was and is the cause of the defective condition of said paving, and the contractor and the superintendent of construction, by virtue of their training and experience and knowledge of paving, should have known of its inferiority." The City of Atlanta is required by its charter to require a contractor doing paving work to give a five-year guarantee; is under a duty to the property owners whose property is improved to see that such guaranty is given, to supervise and inspect the work and approve it for final payment; the work is to be done under the supervision of the superintendent of construction; and if a contractor does paving imperfect or otherwise, it is the duty of said official to condemn the same in the name of the city, and failing to do so the city is negligent and has been negligent in the instant case. The contractor attempted to repair said paving before the expiration of the five-year guarantee, by pouring the cracks in said pavement with tar or other soft substance; and notwithstanding the failure of said pavement to hold up as concrete pavement, the city carelessly and negligently, and

with utter disregard of the rights of the property owners to receive a reasonably permanent paving equal in quality and durability to concrete, "accepted said pavement and continued to attempt to collect" therefor. For these reasons the petitioners refused to make any further payments on their assessments. Petitioners petitioned the street committee of said city to cancel said assessments; and notwithstanding the complete failure of said pavement to hold up as any reasonable pavement of the same cost would be expected to do, the defendants have levied fi. fas. upon the property of petitioners, and have advertised the same for sale on the first Tuesday in November, 1936. The fi. fas. were issued on September 23, 1926, 11 years, 10 months, and 20 days after the lien of the assessments attached to the property of the petitioners. No execution having been issued, and no public effort to enforce the lien of the assessment having been made within seven years from the accrual of the lien (November 3, 1924), the lien is dormant and can not be enforced. Although the defendants are required under the terms of the agreement (notes) and assessment (charter provisions) to proceed at once to collect the balance due, when the assessments due November 4, 1931, were unpaid, the defendants failed to issue a fi. fa. as required by law. The note or agreement (reciting its contents) was in accord with the provisions of the charter relating thereto. The petitioners allege that the liens, under the provisions of the charter, were as complete and full as if execution had issued and been entered on the general execution docket, on November 3, 1924, and that the failure of the defendants to issue and levy executions within the longest period of existence, that is before November 3, 1933, and immediately after the remaining installments of the assessments became due on November 3, 1931, rendered the lien dormant; and under the law as set out in the Code, §§ 92-7701, 92-7702, the city could not renew the lien after it had expired on November 3, 1933. Since the signing of the notes or agreement above referred to, Mrs. J. E. Jackson "has departed this life, and the property covered by the notes she signed at the direction of J. E. Jackson . . has become the property of J. E. Jackson and J. E. Jackson Jr., respectively, who assumed all the outstanding debts against said property." An attack is made upon the constitutionality of City Code § 301(s), the nature of which will more fully appear hereinafter. The prayers are for injunction and

cancellation. The court sustained demurrers and dismissed the petition. The petitioners excepted.

■ The first question to be determined is whether the lien of the assessments or the executions issued thereon are dormant. The Code, § 92-7701, declares: "All state, county, city, or other tax executions, before or after legal transfer and record, shall be enforced within seven years from the date of their issue; or within seven years from the time of the last entry upon the tax execution by the officer authorized to execute and return the same, if said entry is properly entered by said officer upon the execution docket and books in which said entries are required to be made in cases of entries on executions issued on judgments." Acts 1887, p. 23. § 92-7702 declares: "All laws in reference to a period of limitation as to ordinary executions for any purpose, or to the length of time or circumstances under which they lose their lien in whole or in part, are applicable to tax executions." Acts 1887, p. 23. Other provisions of the Code which relate to the subject-matter now under consideration are as follows: § 3-716, declaring: "Any claim or demand held by any municipality, not being in the shape of a special contract, or which shall not have been reduced to execution, shall be barred by the statutes of limitation as provided by the general statutes of limitation of force, and all executions issued by any municipality shall be subject to the same laws as to the statutes of limitation now governing other executions," § 92-4201, providing that municipal corporations may enforce collection of paving assessments by execution "which may be levied by the marshal on the real estate of the owners; and after proceedings as in cases of sales for city taxes, the same may be sold at public outcry." § 110-1001, relating to dormancy of judgments, upon which the sections referring to dormancy or limitations are based, reading in part: "A judgment shall become dormant and shall not be enforced: . . when seven years shall elapse after the rendition of the judgment before execution is issued thereon and entered on the general execution docket of the county wherein such judgment was rendered." According to the allegations of the petition, the paving involved in the instant case was done under section 183 of the Atlanta City Code, a codification of an amendment to art. 7, sec. 7, par. 1 (Code, § 2-5501), of the constitution of the State of Georgia, ratified on November 2, 1920, permitting

cities of 150,000 population or more to issue street-improvement bonds without the assent of two thirds of the qualified voters (Ga. L. 1920, p. 25), and § 301(a), codified from section 1(a) of the act of 1919, amending the charter of the City of Atlanta (Ga. L. 1919, p. 821), which section provides: "That the Mayor and General Council of the City of Atlanta are hereby authorized and empowered to improve their streets, avenues, public alleys, or other public places in said city by paving, repaving, curbing, guttering, and draining the same, including the installation of manholes, catch-basins, and the necessary draining pipes, whenever in their discretion the public necessities may require it, with such form of improvements as to them may seem proper, and assess the cost thereof upon abutting-property owners thereof," etc. It is provided in section 1(v) of the act of 1919 (City Code, § 301(t)), that "This act is intended to provide a complete method for improving streets in the City of Atlanta, when the total cost thereof is assessed against abutting property and street-railway companies; and all and parts of acts inconsistent with the provisions of this amendment are hereby repealed, except that this is a cumulative right, and all acts and parts of acts now in force in said City of Atlanta shall continue in full force and effect, and this act shall be considered as additional and supplementary thereto." Section 1(c) of the act of 1919 (City Code, § 301(c)), provides that "The assessing ordinance shall thereupon assert a lien effective when, after completion, a record thereof is entered in a book to be kept in the office of comptroller, as provided in section 2 of this act, and declare the same at the time said ordinance is passed." Section 2 of the act of 1919 (City Code, § 304) declares, "That the lien of all assessments made by the City of Atlanta in its favor, for all improvements levied against abutting property or abutting-property owners, such as for paving, . . shall attach and become fixed on the date of the entry of the completion of such work in a book prepared therefor by the City Comptroller and kept in his office; and all the provisions of said charter providing a lien from the date of the beginning of the work or to the introduction of the ordinance or resolution therefor, or in any way conflicting with this section, be and the same are hereby repealed, and this section is hereby established in lieu of the same. The provisions of the charter of the city, published in the City Code of 1910, section 302

and section 355, and the provisions of ordinance in said code, section 2407, are hereby specifically repealed, and the provisions of this section established in lieu thereof."

The petition alleges that the city acquired a lien pursuant to the section above quoted, and that the lien attached as against the respective properties of the petitioners on November 3, 1924. L. K. Webb and the predecessor in title of J. E. Jackson and J. E. Jackson Jr. paid one tenth of the amount of their assessments, and executed notes or an agreement for payment of the other nine tenths of the assessments, pursuant to the following provisions of section 1(e) of the act of 1919 (City Code, § 301(e)) : "Upon the completion of the work and the levying of the assessment as above set out, the entire amount of the assessment shall be at once due and payable by the property owners; . . but if so desired, the property owners . . shall have the right to pay the assessment so levied . . in not more than ten instalments, which shall be paid as follows : One equal part cash upon the completion of the work, and passage of ordinance levying assessment for cost, and acceptance thereof by the city, and the remaining equal parts in annual instalments, maturing respectively one to not more than nine years after the date of the approval of the ordinance assessing cost," and section 1(l) (City Code, § 301(k)), that "Said notes may, in the discretion of the holder of the assessments, liens, bills, etc., provide for acceleration of the notes or series not yet due, upon default in the payment of any one thereof." All of the instalments were duly paid through the instalments due in 1930; and upon the instalment of 1931 becoming due the petitioners failed and refused to pay it. No execution was issued or levied until September 23, 1936, more than seven years after November 3, 1924, when the lien of the assessment attached to the respective properties.

In *Sharpe* v. *Waycross,* 185 *Ga.* 208 (194 S. E. 522), involving a statute amending the charter of the City of Waycross, and providing that executions should issue upon each instalment of a paving assessment as it became due, this court declared that "when the dormancy-judgment act [Code, § 110-1001] is applied in its operation to taxes or paving assessments, the time for issuing the execution is the 'judgment' from which the period of limitation begins to run," and "So long as the time for the issuing of the

execution has not arrived, the statutes relating to dormancy have no effect upon the life of the lien created by the assessment." Among the statutes there referred to were those specifically relied upon by the petitioners in the instant case. It is insisted, however, that the rulings in the *Sharpe* case are not applicable to the instant case, because the statute amending the charter of the City of Waycross specifically provided that execution should issue upon default in the payment of each instalment as it became due, and that the charter of the City of Atlanta (City Code, § 306) providing that the "mayor and general council of said city shall have authority to enforce the collection of the amount of any assessment . . by execution to be issued by the clerk of council against the real estate assessed, and against the owner thereof, at the date of the ordinance making the assessment," provides only for the issuance of one execution, and that it shall be issued at the date of the ordinance making the assessment. Section 1(p) of the act of 1919 (City Code, § 301 (n)), declares that it is the duty of the parties legally bound to pay the assessments "to make payments of such instalments as the same fall due," and that "the city shall allow the use of its machinery of government for the collection of all said assessments for the purpose of paying same as hereinbefore set forth, as provided by law at present." Section 1(w) of the act of 1919 (City Code, § 301(u)), provides that "The mayor and general council shall have authority to pass such ordinances and do such other acts as may be necessary to give full force and effective operation to the provisions of this amendment."

Whether or not section 2 of the act of 1919, providing that the lien of the assessments "shall attach and become fixed on the date of the entry of the completion of such work in a book kept and prepared therefor by the city comptroller and kept in his office, and all the provisions of said charter providing a lien from the date of the beginning of the work or to the introduction of the ordinance or resolution therefor or in any way conflicting with this section be and the same are hereby repealed, and this section is hereby established in lieu of same," and expressly repealing sections 302 and 355 and 2407 of the City Code of 1910, effected a repeal of section 306, or whether it merely effected a substitution of the time for issuing execution as of the completion of the work and proper entry made on the book kept by the comptroller, and

whether, if the latter, executions could be issued upon each instalment of a paving assessment as it became due under the act of 1919, it is not necessary to decide; this for the reason that under the general law of force before 1919 (Code, § 92-4201, Ga. L. 1884-5, p. 148), "All municipal corporations may enforce the collection of any amount due or to become due for paving streets . . by execution to be issued by the treasurer against the persons or corporations by whom such debts may be due, which may be levied by the marshal on the real estate of the owners, and after proceedings as in cases of sales for city taxes the same may be sold at public outcry," and in view of this statute and section 301(n) of the City Code, codified from the act of 1919, providing that the property owners shall pay the instalments as they become due, and that the city shall allow the use of its machinery of government for the collection thereof, as then provided by law, we are of the opinion that the legislature intended and so provided for the issuing of executions upon default in the payment of an instalment as it became due, and did not, by their failure to provide in specific terms therefor, intend that executions should issue to enforce collection of assessments not yet due. This being true, the ruling in *Sharpe* v. *Waycross* applies to the lien of the assessments and the executions issued in the instant case; and these executions having been issued and levied, and suit to enjoin their further progress having been filed by the petitioners, all within seven years after the time for their issuance, neither the lien of the assessments nor the executions had become dormant.

■ The executions not being dormant, it becomes necessary to pass upon the other questions presented. Section 1(b) of the act of 1919 (City Code, § 301(b)), declares that "No resolution or ordinance seeking to pave, repave, or improve a street or public place as herein authorized shall be passed unless petitioned, in writing, by the owners of more than fifty per cent. of the property abutting on the street . . proposed to be paved or repaved; and such resolution shall describe the general character of the improvements to be made," etc., "and pending the consideration of such resolution or ordinance an advertisement shall be inserted at least one time in one of the daily papers of the city, ten days before the final passage, . . giving notice of the introduction of such resolution or ordinance, the street . . to be paved, repaved,

. . the estimated cost per front foot," and shall notify the property owners to appear at a meeting of the general council at a time stated, for the purpose of making objections; that after the passage of the resolution or ordinance "all property owners . . who do not within fifteen days thereafter commence legal proceedings to prevent said assessment being made shall be conclusively presumed to have accepted the terms of said resolution or ordinance, and shall have agreed that the assessment hereinafter provided for may be made. Thereupon it shall be the duty of the mayor and general council to forthwith cause said improvement to be made in accordance with the plans and specifications as prepared. When completed, an ordinance shall be passed, assessing the cost of said improvement against the property owners on each side of the street . . so paved, repaved, or improved," etc. The petition alleges, that the city, acting under its charter powers contained in sections 183 and 301(a) of the City Code, caused the street to be repaved with a patent paving known as "Wilhite paving," and pursuant to further provisions of the charter the street was paved with "Wilhite paving;" that the city acquired a lien on the property of the petitioners therefor; that the street was so paved, notwithstanding a "majority of the abutting-property owners" in front footage signed a petition requesting concrete paving, and notice of concrete paving was served upon the property owners; that the petition for Wilhite paving was got up by a contractor, contrary to the charter provisions of the city; and that the city let the contract for the paving without bids or advertising for bids; that notwithstanding the failure of the city to pave with concrete, L. K. Webb and J. E. Jackson acting for his wife, Mrs. J. E. Jackson, then the owner of the properties now owned by J. E. Jackson and J. E. Jackson Jr., agreed to accept "Wilhite" paving upon the assurance of a member of city council and the superintendent of construction of the city, that "Wilhite" paving would be as satisfactory and permanent as concrete pavement. The petition in these respects is somewhat equivocal in its allegations, and it does not clearly appear therefrom whether the petitioners are claiming that the assessments are invalid for these reasons. However, we will so treat these allegations, and deal with them accordingly. For the present we will not consider the allegation relating to the letting of the contract without bids or advertising for bids.

While the petition alleges that the city caused the street to be paved with "Wilhite" paving after petition for concrete and notice to the property owners of concrete paving, it does not allege that after the petition for "Wilhite" paving (apparently in the nature of an amendment to the original petition for concrete paving) the city did not give proper notice of the introduction of an ordinance seeking to pave the street with "Wilhite" paving, or that the other preliminary requirements of a valid assessment were not complied with. Even if the petition should be construed as alleging that no notice by advertisement as required was given to the property owners, the petitioners or those under whom they claim had actual notice and agreed to accept "Wilhite" paving; and under the provisions of section 1 of the act of 1919 (City Code, § 301 (k)), providing that "the giving of such notes [promising to pay the assessment in instalments as was done in the instant case] by such property owners, or the signing of a contract to pay in instalments, shall be conclusive evidence against the property owner that he is satisfied with the contract so made and the assessment so levied, and he shall be precluded from denying the validity of said ordinance for the letting of such contract, the doing of such work, the completion of same in accordance with the contract, and the levying of said assessments for said improvements," the petitioners are precluded from attacking the assessment on these grounds. The execution of notes or an agreement to pay assessments in instalments is a voluntary act under the statute; and when a property owner executes such notes or agreement, he does so with full knowledge of the law relating thereto, and is bound thereby. See generally *Montgomery* v. *Atlanta,* 162 *Ga.* 534 (134 S. E. 152, 47 A. L. R. 233); *Avery* v. *Atlanta,* 163 *Ga.* 591, 597 (136 S. E. 789); *City of Marietta* v. *Dobbins,* 150 *Ga.* 422 (104 S. E. 444); *Edwards* v. *Atlanta,* 168 *Ga.* 227 (147 S. E. 524). The fact that the petitioners or those under whom they claim agreed to accept "Wilhite" paving in lieu of concrete as originally petitioned for, by reason of reliance upon the statements of the city officials, does not affect the rulings above made. In *City of Marietta* v. *Dobbins,* supra, it was held that alleged fraudulent representations by the city officials that sewerage facilities would be installed before the laying of paving, in reliance upon which representations the petitioner in that case was induced to

sign a petition for paving, "does not constitute such fraud on the petitioner as will invalidate the legal effects of his petition."

■ As to the claim of the petitioners that the contract was let by the city without bids or advertising for bids, we are of the opinion that the petitioners are precluded from attacking the assessment on this ground, under the provisions of the statute referred to above. However, even if it should be that the contract is void for this reason, and that under these circumstances the ruling in *Montgomery* v. *Atlanta,* supra, that where the contract for the construction of a public improvement has been made, and an assessment has been levied to pay the contract price of such improvement, the validity of such contract is essential to the validity of the assessment, and if the contract is invalid the assessment is invalid, is applicable to the instant case notwithstanding that bonds have been issued and the assessments are collected for the payment of the bondholders and not the contractor, under the act of 1925 (Ga. L. 1925, p. 839) "All contracts which have been, or may be, entered into by the city for public improvements let under the plan provided by the amendment to the city's charter approved August 19th, 1919, as amended, where the work has been or may be accepted by the city, . . are hereby ratified, confirmed, and declared legally binding." Therefore the contract for paving in the instant case is not subject to the attack that it is not binding and valid.

■ We now come to the question whether the petitioners' claim that the paving was defective and is not worth what they have already paid is sufficient to relieve them from paying the remaining portion of the assessment, under the facts as alleged. "The validity of a power conferred upon a municipal corporation to levy local assessments for street improvements against the private property of abutting landowners depends upon whether or not such property, in addition to a benefit common to all the property of the municipality, which is supposed to result from such improvement, is in any manner specially benefited by the proposed improvement," and "if . . there be such a gross disproportion between the sum assessed against a particular lot owner and the value of his abutting lot as that, if the municipal corporation be permitted to proceed with its collection, such action would amount to a virtual confiscation of the landowner's property, the assessment can not be

upheld as a valid exercise of the power conferred; and a court of equity will enjoin the collection of the sum so assessed." *City of Atlanta* v. *Hamlein,* 96 *Ga.* 381 (23 S. E. 408); *City of Atlanta* v. *Gabbett,* 93 *Ga.* 266 (20 S. E. 306); *City of Atlanta* v. *Hanlein,* 101 *Ga.* 697 (29 S. E. 14); *Holst* v. *LaGrange,* 175 *Ga.* 402 (165 S. E. 217). However, where the cost of the improvement in front of the abutting property does not exceed the value of the property with the improvements thereon, the assessment levied thereon is not invalid on the ground that it does not benefit the property and is confiscatory. *City of Valdosta* v. *Harris,* 156 *Ga.* 490 (14) (119 S. E. 625); *Norman* v. *Moultrie,* 157 *Ga.* 388 (121 S. E. 391); *Bennet* v. *Vittum,* 185 *Ga.* 74 (194 S. E. 365). And such improvement does not necessarily have to benefit the property in its present use, but is valid if it benefits the property for any use to which it is reasonably adapted. *Georgia Railroad &c. Co.* v. *Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935). "As was said by Mr. Justice Holmes: 'There is a look of logic when it is said that special assessments are founded on special benefits, and that a law which makes it possible to assess beyond the amount of the special benefit attempts to rise above its source. But that mode of argument assumes an exactness in the premises which does not exist. The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law.' L. & N. R. Co. *v.* Barber Asphalt Paving Co., 197 U. S. 433 (25 Sup. Ct. 466, 49 L. ed. 819). See, in this connection, Chicago &c. Ry. Co. *v.* City of Janesville, 137 Wis. 7 (118 N. W. 182), and valuable note to this case in 28 L. R. A. (N. S.) 1124." *Georgia Railroad &c., Co.* v. *Decatur,* supra.

The petitioners in the instant case are not seeking to set aside the assessments on the ground that their abutting property has received no benefit from the improvement, but on the ground that the paving, through a latent defect, failed to hold up, and cracked into sections, and for this reason it is not worth its purchase-price, and a partial failure of consideration has resulted. As a general rule, the failure of street improvements to meet the requirements of specifications, in the absence of fraud, is not available to the

property owners as a defense to the enforcement of the assessment where the improvement has been accepted by the proper city authorities, and where there has been a substantial compliance with the contract. Note, 56 L. R. A. 905. In Hydraulic Press Brick Co. v. Nickell (Mo. App.), 221 S. W. 815, it was held that defects in a pavement contracted for by the city, which do not appear until some years after the work is done and after it has been in use for some time, do not defeat a right of recovery for special tax bills issued for the work. It has been held that where there is a substantial compliance with a contract which the municipal authorities had the power to make, the fact that the improvement was not serviceable (Fellows v. Dorsey, 171 Mo. App. 289, 157 S. W. 995), or that it would not long withstand the use to which it would be put (Webster Groves v. Reber (Mo. App.), 226 S. W. 77), will not invalidate the assessment. In *Edwards* v. *Atlanta*, supra, involving the identical paving statute involved in the present case, this court said that in view of the provisions of the statute that after the passage of a resolution or ordinance for repaving a street all property owners to be assessed for the cost of the improvement, who do not within fifteen days commence legal proceedings to prevent an assessment on their property, shall be conclusively presumed to have adopted the terms of the resolution or ordinance and to have agreed that the assessment may be made, petitioners who neglected and failed to take the steps provided for in the charter were barred from maintaining a petition for injunction to prevent collection of the assessments, alleging that less than a majority of the frontage signed the petition for paving, *and that the work was defective,* and had been improperly delayed. Such a case is made much stronger by reason of the provisions contained in the statute as to the signing of notes or an agreement to pay the assessment in instalments, dealt with in the preceding division of this opinion. It is not alleged in the instant case that the contractor failed to comply with his contract, or that there was any fraud in the acceptance of the paving by the city. Whether or not the acceptance of the paving as originally laid, in view of the allegation that the defect therein was patent, was not binding upon the city or the abutting-property owners, when the city accepted said paving as repaired by the contractor under his contract of guaranty, the property owners, under the above rulings, were bound thereby,

and can not be heard now to complain. Whether or not the property owners may maintain an action for damages against the city for the alleged negligent acceptance of the pavement, or may mandamus the city to put down a more permanent or satisfactory paving, are not questions now presented for decision.

■ Under the allegations of the petition it is not necessary to pass upon the question of whether section 1(u) of the act of 1919 (City Code, § 301(s)), providing that the entry on the minutes of council shall be notice of the lien of the assessment, violates the constitutional provision, art. 1, sec. 4, par. 1 (Code, § 2-401), declaring that no special law shall be enacted in any case for which provision has been made by an existing general law, in that said section is contrary to the general law set forth in the Code, § 67-2501, declaring that "Deeds, mortgages, and liens of all kinds, which are required by law to be recorded in the office of the clerk of the superior court, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed of record in the clerk's office." "It is a well-known axiom of the law that this court will not consider a constitutional attack upon an act where the party attacking the same 'does not allege any injury accruing to him by the enforcement of the act,' and 'A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it,' and 'a party must be prejudiced by the enforcement of a statute, or the courts will not listen to an objection by him to its constitutionality.' Reid v. Eatonton, 80 Ga. 755, 757 (6 S. E. 602); Plumb v. Christie, 103 Ga. 686 (30 S. E. 759, 42 L. R. A. 181)." Griffin v. State, 183 Ga. 775, 777 (190 S. E. 2). L. K. Webb has been the owner of his property from the petitioning for paving to the present time. It does not appear from the allegations of the petition that the Jacksons acquired their property by transfer. So far as may be gathered from the petition, they may have acquired title by descent as heirs at law of the mother and wife, Mrs. J. E. Jackson. It also appears from the petition that J. E. Jackson had actual notice of the lien, and that both he and J. E. Jackson Jr. acquired their respective properties subject to outstanding "debts." Under these circumstances the general law and special law above

referred to would have no application to the petitioners, and they could not be injuriously affected by the application and enforcement of the special law. Therefore they could not attack its constitutionality; and under the above rulings this court will not pass upon such attack.

It follows that the court did not err in sustaining the demurrers and dismissing the petition.

*Judgment affirmed. All the Justices concur.*