## TEMPLEMAN *v.* WILLIAMS.

Where a vendee of realty borrowed the money that was paid for it, and thereafter breached his contract with his lender by which he undertook to keep the taxes paid, and in consequence the property was sold for taxes, he could not, even after the redemption period, acquire from the buyer at the tax sale such title as to defeat the equitable rights of his lender of the purchase-money first mentioned. The auditor's findings were authorized, and the court did not err in confirming them, and in the decree as rendered.

No. 6112. FEBRUARY 25, 1928. REHEARING DENIED MARCH 3, 1928.

Exceptions to auditor's report. Before Judge Humphries. Fulton superior Court. May 18, 1927.

*J. D. Stewart* and *T. J. Lewis,* for plaintiff in error.

*T. J. Ripley, B. H. Hill & Son,* and *Brown & Brown,* contra.

BECK, P. J. Brown bought a house and lot, and borrowed of Mittie Williams the sum of $1000 to pay the purchase-money of the property, or the larger part thereof, and received a deed from his vendor. His promissory notes, falling due at different dates and aggregating the amount of the loan made to him by Mittie Williams, were executed and delivered to her, and a deed to secure the payment of the notes was also made by him and delivered to Mittie Williams. Brown also entered into a written contract with her, under the terms of which she agreed to make additions to the house not to exceed in cost the sum of $1000. She was also to occupy a part of the house at a stipulated rental. Under this contract all the taxes on the property and insurance were to be "kept up" by Brown, but he breached his written obligation to pay the taxes. Executions for the same were issued, which were bought

---

Mortgages, 41 C. J. p. 494, n. 81.
Trusts, 39 Cyc. p. 160, n. 62.

by one Thomas, and the property was sold under these executions, and Thomas bought it at the tax sale and held it under the tax deed for approximately 14 months; at the end of which time the property was purchased by the Atlanta Banking & Savings Company, which held it under a quitclaim deed from Thomas for about six months. The property was then sold by the bank to Eva Templeman, the plaintiff in error, on March 25, 1925, and she went into possession under a quitclaim deed from the bank.

1. Under the evidence, the auditor to whom the case was referred was authorized to find that the bank was "carrying the property for Mittie Williams at the time it made a demand on Brown to pay off the moneys advanced by it for Mittie Williams."

2. The auditor was also authorized to find that Eva Templeman, who was a sister of Brown and who paid off the amount of the taxes and took a deed from the bank, was procured by Brown to make the payment of the taxes and to take the deed in her own name, but the money was paid for Brown and the deed was made for Brown under circumstances that vested him with the equitable title and the actual ownership of the property.

3. The sale of the property for taxes resulted from Brown's breach of his written obligation; and though the redemption period had passed, Brown could not obtain a title good as against his principal, Mittie Williams, and she could maintain her suit to have her rights, interests, and title to the property in controversy established by a decree of a court of equity, as was done by decree in this suit, in which provision is made for payment to Eva Templeman of the money paid out by her for taxes and the interest thereon. This principle was distinctly recognized in the case of *Bourquin* v. *Bourquin,* 120 *Ga.* 115. (47 S. E. 639), where it was said: "Where in consequence of a trustee's breach of duty the estate is sold for taxes, he can not, even after the expiration of the redemption period, acquire a title from the purchaser at the tax sale, good as against his cestui que trust. In equity the reconveyance will be treated as a correction of the wrong, leaving the property impressed with the original trust."

4. The rulings made above decide the controlling issues in this case, and the findings of the auditor upon those issues were authorized by the evidence; and the court did not err in rendering judgment and passing the order confirming the findings of the

auditor; nor did the court err in rendering the final judgment and decree which is excepted to upon the ground that it is "contrary to law and equity and without evidence to support it."

*Judgment affirmed.   All the Justices concur.*