HORTON *v.* JOHNSON, executrix, *et al.*

No. 13576.  MAY 28, 1941.  REHEARING DENIED JUNE 18, 1941.

344

*J. L. Barwick* and *Powell, Goldstein, Frazer & Murphy,* for plaintiff in error.

*McElreath, Scolt, Duckworth & DuVall, Jones, Powers & Williams,* and *Robert Lee Avary Jr.,* contra.

PRATT, Judge. It is ably argued by learned counsel for the plaintiff in error that the evidence is insufficient to support the verdict. When this case was formerly here, 187 *Ga.* 9, supra, this court in effect ruled that the allegations of the original petition, with the exceptions there stated which have been cured by amendment, taken as true, would entitle the plaintiff in the trial court to the relief sought. After a careful and painstaking study of the record we are unable to hold as a matter of law that the verdict is not supported by evidence. The petition as amended alleges that Mrs. Smith is obligated to pay the taxes on the land involved,

both because of her legal duty to do so as owner, and also because of her written obligation to the testatrix of the plaintiff. The petition alleges two grounds why the plaintiff in error should not be permitted to exercise her option contract to purchase from Interstate Bond Company its tax title to the land in litigation. First, it is alleged that the plaintiff in error and her mother "have conspired to get title to said property through said tax deeds held by Interstate Bond Company, for the sole purpose of defeating the first loan deed and judgment held by petitioner against said property;" and second, "that the said option was taken by Miss Horton in her name for the benefit of her mother, Mrs. Corinne S. Smith, . . while conspiring with her mother to keep from paying petitioner the loan she holds against said property, and for no other purpose." Stated differently, the plaintiff below predicated her right to the injunctive and other relief prayed on two separate theories, namely, that Miss Horton entered into a conspiracy or fraudulent scheme with her mother to acquire for herself Interstate Bond Company's tax title to defeat enforcement of the security deed and judgment alleged, *or* that through such fraudulent conspiracy she was seeking to acquire the tax title in her own name for the benefit of her mother and with like purpose of defeating enforcement by Mrs. Gholstin's executrix of the security deed involved. We are of the opinion that if the evidence supports either theory, the general grounds of the motion are without merit. It appears that there was evidence tending to prove that the plaintiff executrix had employed counsel to enforce her debt against the land involved, and that Mr. Thomas Howell Scott was the lawyer handling this matter for her. The jury would be justified, under the evidence, in concluding that the representation by Mrs. Smith to Mr. Scott that "she had paid the taxes" was intended for Mrs. Gholstin's executrix, and was acted on by her through her counsel. Would not the admitted fact that about or near the time of these alleged representations by Mrs. Smith, her daughter, Miss Horton, obtained from Interstate Bond Company the option contract, coupled with other circumstances developed by the evidence, including the close relation of mother and daughter living together, justify the jury in concluding that they were acting together, and that through this conspiracy Miss Horton had gained an unfair advantage over the plaintiff? It is our conclusion that the jury would be justified in

finding there was a conspiracy. The declaration of one of the conspirators during the pendency of the conspiracy would in law be the declaration of the other.

"Conspiracy is the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." 1 Eddy on Comb. § 171. The evidence supports the conclusion that the means by which Miss Horton was to acquire the title to the realty here involved was through fraud, and hence unlawful. As was said by the late Chief Justice Russell while a Judge of the Court of Appeals of this State, in *Woodruff* v. *Hughes,* 2 *Ga. App.* 361, 365 (58 S. E. 551) : "The law recognizes the intrinsic difficulty of proving a conspiracy. . . The conspiracy may sometimes be inferred from the nature of the acts done, *the relation of the parties,* the interests of the alleged conspirators, *and other circumstances."* (Emphasis ours.) The plaintiff in the court below alleged a conspiracy to defraud. "However, it must be proved that there was a conspiracy to defraud and a participation in the fraudulent purpose, either in the scheme or in its execution which worked injury as a proximate consequence." 12 C. J. 586. "In the reception of circumstantial evidence great latitude must be allowed. The jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue and which will enable them to come to a satisfactory conclusion." 12 C. J. 634. Our Code, § 37-706, provides that "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Indeed this rule is particularly applicable where fraud is charged, as in this case, in family transactions. *Woodruff* v. *Wilkinson,* 73 *Ga.* 115 (3) ; *Holbert* v. *Allred,* 24 *Ga. App.* 727 (2) (102 S. E. 192). Rarely, if ever, can fraud be shown by direct proof. As was well stated in *Bryant* v. *Dickerson,* 19 *Ga. App.* 80, 82 (90 S. E. 1027), "Where transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties." It is insisted that the present plaintiff in error gave positive and uncontradicted testimony negativing

any fraud or collusion charged against her and her mother. This court held, in *Detwiler* v. *Cox,* 120 *Ga.* 638 (48 S. E. 142), that "The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obligated to believe him, even though he is not contradicted by any other witness." See the cases there cited. We are not unmindful of the ruling in *Watson* v. *Brown,* 186 *Ga.* 728, 731 (198 S. E. 732), that "Circumstances creating a mere suspicion [of fraud] are not sufficient." That case is distinguished from the case at bar on its facts. The evidence now under review presented issues of fact for a jury to resolve. The verdict has the approval of the trial judge. Therefore this court has no power to set the verdict aside on the general grounds of the motion for new trial.

The plaintiff in error further contends that the plaintiff in the court below was estopped to claim that Mrs. Smith's covenants in the writing assuming all the obligations of the original grantor in said security deed created any obligation on her part to pay the taxes against the real estate involved, because the final judgment in the foreclosure proceeding on the security deed is one in rem and not in personam. This contention appeared in a different form when the case was formerly here. *Horton* v. *Johnson,* supra. One of the grounds of special demurrer to the petition called for a copy of this judgment of foreclosure to be attached to the petition, showing whether the same was in rem or in personam. This court then held there was no merit in this ground, and that the trial court properly overruled it. But, without regard to any express covenant on her part to pay the taxes on the realty involved, Mrs. Smith was under the legal obligation to pay the same as owner thereof. Manifestly no such judgment could destroy the obligation the law imposed upon Mrs. Smith, as the owner, to pay the taxes assessed against her on this land by the State and its political subdivisions. As was pointed out by this court on the former appearance of this case, it would seem that the remedy of the plaintiff in the court below would not depend alone on the express covenant of the maker of the security deed, or one standing in his stead, to pay the taxes on the land so conveyed as security, but would likewise exist where there is only the legal duty of such person to pay such taxes as owner. It is elementary that the law of the place, of force when

and where a contract is entered into, is as definitely a part of the contract as though it were expressly incorporated in or referred to therein. *West End & Atlanta St. R. Co.* v. *Atlanta St. R. Co.*, 49 *Ga.* 151 (5) ; *Bank of Chatsworth* v. *Hagedorn Construction Co.*, 156 *Ga.* 348, 357 (119 S. E. 28).

■ The first special ground of the motion for new trial assigns error on the admission in evidence of the security deed pleaded by the plaintiff, from H. Boyd to Mrs. Warren, conveying the land which is the subject of this litigation, over the objection that "it did not appear how it got into the hands of plaintiff, by transfer or otherwise, and because it did not appear what connection it had with the case." This ground is not meritorious. The pleadings clearly show the connection of this writing with the case. That a written document is not of itself alone sufficient to establish a fact sought to be proved does not render it inadmissible. Sufficiency of proof is one thing; admissibility of the evidence offered as proof is quite another. The plaintiff in the court below introduced in evidence thereafter another writing signed by Mrs. Corinne S. Smith and Mrs. Mary R. B. Gholstin, in which it is stated that Mrs. Katherine Butt Warren "on July ———, 1922, sold to Mrs. R. B. Gholstin all her right, title, and interest in and to the said loan deed and note." It was stipulated in this writing that Mrs. Smith was the then owner of the land subject to said loan deed, and this writing also stated that the said "property which was conveyed to secure the payment of said loan is now owned by Mrs. Corinne S. Smith, who purchased same subject to said loan." Further, the defendant later introduced in evidence a judgment in favor of the plaintiff's testatrix, based on this loan deed and the debt it was given to secure, which binds her to the position that Mrs. Gholstin had the legal right to sue thereon.

■ The grounds of objection by the plaintiff in error to the admission in evidence of the writing denominated an extension agreement between Mrs. Smith and Mrs. Gholstin, dated August 11, 1927, referred to in the second special ground of the motion for new trial, are without merit, and the court properly overruled them. These grounds were that a judgment rendered in another case, wherein Mrs. Gholstin was undertaking to enforce collection of the note secured by the deed involved against Mrs. Smith and H. Boyd, was in rem, to be satisfied only from the land described in said

security deed, and therefore that the plaintiff was estopped to claim any right by reason of the agreement objected to. It should be borne in mind that the proceeding here is in its nature ancillary to the proceeding in which the judgment referred to was rendered. The plaintiff executrix of Mrs. Gholstin was not seeking in this case to establish her right to subject the realty involved to the debt. That was done in the case wherein the judgment was rendered. Mrs. Gholstin's executrix was seeking to prevent the defendant from defeating the very rights established by that judgment. This judgment did not affect the statutory liability of Mrs. Smith for taxes properly assessed against her on the land involved during the time she owned it. The judgment was the termination of an action to enforce a private obligation existing independently of taxes. There is nothing in the record now under review to show that the question of the payment of taxes could have been properly adjudicated in that litigation. Further, this document contained an admission by Mrs. Smith, one of the defendants, that the testatrix of the plaintiff owned all right, title, and interest in and to said loan deed and note. The plaintiff in error contends that the judgment in rem on this note, to be made out of the land conveyed by the security deed, is an estoppel by record against the executrix to have admitted in evidence the document objected to. No such estoppel follows from the judgment. The judgment itself binds the plaintiff in error, who introduced it as evidence, to the position that the plaintiff in that judgment was the owner and holder of the security deed in question and the note which it secured, and also of the legal title to the realty conveyed by such deed.

■ The fourth headnote requires no elaboration.

■ A writing was objected to on the grounds that (a) it bears no date and nothing to show when executed, and (b) it "relates to taxes on this property accruing after the execution of the option contract was made by Miss Horton," and is therefore irrelevant and immaterial, and (c) if such evidence relates to transactions had before the option contract was made by Miss Horton, it is also irrelevant and immaterial and does not throw any light on the issues in this case. The document objected to has to do with a tax execution against Mrs. Smith and the property here involved, and Mrs. Smith's connection therewith, as well as that of her agent through whom she was dealing. It is a circumstance to be considered by

the jury on the question of conspiracy, especially since it appears that the same person acted as agent for both Mrs. Smith and her daughter, Miss Horton, in many of the transactions relative to the realty involved.

■ The assignment of error in ground 6 of the motion for new trial, on the overruling of objection to the introduction in evidence of a tax deed and the execution under which the deed was made, on the ground that these documents were irrelevant and immaterial, because the deed was executed after the option contract between Miss Horton and Interstate Bond Company, without showing in this ground the date of the option contract, is insufficient. The ground being dependent on a fact not shown in the ground itself, the assignment is not valid. *Garrick* v. *Tidwell,* 151 *Ga.* 294 (3) (106 S. E. 551). The other assignment in this ground, that the evidence was improperly admitted over the objection that the tax execution was barred by the statute of limitations, is without merit. It was for 1929 state and county taxes. It was levied on December 11, 1936, the sale of the land so levied was made in January, 1937, and deed thereunder executed on February 19, 1937. See Code, §§ 92-5102, 92-7701, 92-7702; *Sharpe* v. *Waycross,* 185 *Ga.* 208 (194 S. E. 522).

■ What has just been said, relative to the assignment of error being dependent on another fact not shown in the ground of motion itself, applies with equal force to the ground of objection set forth in ground 7. The evidence admitted here was a tax execution for 1929 City of Atlanta taxes against Mrs. Smith on the property here involved, with entry of levy dated January 13, 1937. The further ground of objection, that the execution was barred by the statute of limitations, is without merit. Although the execution appears to have been dormant when levied, no rights were being asserted under the deed conveying the land sold under this execution, and it was admissible to show one of the transactions in a course of dealings by Mrs. Smith as the person liable to pay the taxes on the land involved, and in permitting the taxes to accumulate and become delinquent over a period of several years, while the loan held by Mrs. Gholstin and her executrix was running thereon.

■ Complaint is made, in ground 8, of an excerpt from the charge. The court charged the jury that if they believed from a

preponderance of the evidence "that Miss Edgarda Horton conspired with Mrs. Corinne S. Smith, or any person representing Mrs. Corinne S. Smith, for the purpose of acquiring title to the property at a tax sale, or for the purpose of acquiring title from a person who had in turn acquired it at tax sale, you would be authorized to find for the plaintiff in this case, provided you believe from the preponderance of the evidence and the rules I have given you that said Mrs. Corinne S. Smith was obligated either as owner or under an obligatory contract to pay the taxes on the real estate as set out in the original petition." It is urged that this was error, because "it authorized and instructed the jury to find for the plaintiff if Miss Horton 'conspired' with Mrs. Smith, or any person representing Mrs. Smith, for Miss Horton to acquire title to the property, without reference to whether Miss Horton acquired the title to the property as trustee for Mrs. Smith or for the benefit of Mrs. Smith, or acted as agent for Mrs. Smith in acquiring title." As pointed out in the first division of this opinion, this position is not sound. The following language from 12 C. J. 648, states the principle applicable: "The word ('conspire') is in common use and necessarily carries with it the idea of agreement, concurrence, and combination, and hence is not applicable to a single person or thing; and when one person is charged with conspiring with another, there are no words in the English language by which the idea of the action and co-operation of two minds could be more effectively conveyed, since one can not agree or conspire with another who does not agree and conspire with him." A conspiracy to do an act, as is so well stated in the language just quoted, is never the work of one person. And when an act is done as the result of a conspiracy, such act is in law never the act of one person. Another assignment of error on this excerpt is that it is not authorized by the evidence. This is without merit, and the discussion of the general grounds in the first division of this opinion applies to this assignment. The further assignment of error on this portion of the charge, that "if Miss Horton conspired with . . any person representing Mrs. Corinne S. Smith, for the purpose of acquiring title to the property at a tax sale," etc., the jury would be authorized to find for the plaintiff, if Mrs. Smith was obligated to pay the taxes, does not show reversible error. While the language used may be said to be slightly inapt, the idea that

the conspiracy must be had with Mrs. Smith acting by herself personally or through an authorized agent is sufficiently conveyed by the language used. Especially is this true when considered in the light of the entire charge. Had more specific instructions been desired, a timely written request should have been presented.

■ Headnote 9 is sufficiently full.

■ The following excerpt from the charge is complained of in ground 10: "I charge you further, that if you believe from a preponderance of the evidence, and under the rules I have given you, that these defendants, or Mrs. Smith, was obligated to pay the taxes, either as owner of the property, or by assumption under the contract dated August 11, 1927, that she, the said Mrs. Smith, could not acquire title to the property to the exclusion of the plaintiff herein, or to the hurt and the harm of the plaintiff herein, by purchasing at tax sale, even though the time of the redemption period may have passed." It is urged that this was an incorrect statement of the law; that as a matter of law even the owner under obligation to pay the taxes could, after the period of redemption has passed, purchase the tax title and acquire good title, even though he did not then have good title to the land so purchased. This is decided adversely to the plaintiff in error in *Union Central Life Insurance Co.* v. *Bank of Tignall*, 182 *Ga.* 233, 235 (185 S. E. 108). It was there held: "Where redemption is accomplished, whether by right during the statutory period, or by grace after the period as above indicated, the effect thereof, as declared by section 92-8302, shall be to put the title conveyed by the tax sale back into the defendant in fi. fa., subject to all existing liens at the time of the sale. Liens as here used will comprehend also title under deeds for security of debt. This accords with the ruling in *Templeman* v. *Williams*, 166 *Ga.* 60 (142 S. E. 534)." It is further urged that this part of the charge is error, because it does not limit it to the case where Mrs. Smith was under obligation to pay the taxes on the property. There was no issue on this question. The evidence is uncontradicted that Mrs. Smith was the owner. The plaintiff in error herself so testified. Moreover, there was a stipulation to that effect. There can be no more binding obligation to pay taxes on any given property than that which the law places upon the owner thereof. The known certainties are frequently referred to as "taxes and death."

■ In ground 11 the plaintiff in error complains that the following portion of the charge is error requiring the grant of a new trial: "The principle that one who is bound to pay the taxes on property can not strengthen his title by purchase at tax sale, but such purchase will be treated as payment of the taxes, is not applicable if the purchaser at the tax sale is not the person bound to pay the taxes, is not the owner, not in any way bound for payment, and there is no collusion between the person who is bound to pay and the purchaser; but if the sale was in good faith, and he went at his own expense and purchased the tax deed, with no evidence of fraud or bad faith, and later sold the property, the sale would be good, provided you find that there was no collusion between the two in carrying out this transaction." The following assignments of error on this charge are made: (a) it is not a correct statement of law; (b) it is inapplicable to the facts; (c) it is misleading; (d) it places the burden on the purchaser of the tax title to show there was no collusion between him and the person bound to pay the taxes, and that the sale was made in good faith, and no evidence of fraud or bad faith; and (e) it was a charge in effect that the purchaser of the tax deed does not acquire good title if there was any evidence of fraud or bad faith, notwithstanding such evidence is insufficient to carry conviction of the existence of such fraud or bad faith. Obviously the court was undertaking here to instruct the jury on the law applicable to the contentions of Miss Horton in the trial. The first portion of this excerpt from the charge, standing alone, correctly states the law applicable. But we understand the assignments to be directed to the following portion of this excerpt: "but if the sale was in good faith, and he [purchaser] went at his own expense and purchased the tax deed, with no evidence of fraud or bad faith, and later sold the property, the sale would be good, provided you find that there was no collusion between the two in carrying out this transaction." Construing this portion of the charge in the light of the pleadings and the evidence, it is manifest that it is an instruction to the jury that if the sale of the land for taxes, at which Elyea Inc. purchased the land involved, was in good faith, and Interstate Bond Company went at its own expense and purchased the tax deed made to Elyea Inc., with no evidence of fraud or bad faith, and later sold the property (as for example to Miss Horton), such sale would be good if there

was no collusion between the two (Miss Horton and the owner of the land, Mrs. Smith) in carrying out this transaction. Thus construed, as we think it should be, the charge does not contain the vices alleged by the plaintiff in error, unless the contentions that it places on the purchaser of the tax title, the Interstate Bond Company, the burden to show there was no evidence of fraud or bad faith in such purchase by it from Elyea Inc., and also that Miss Horton could not acquire good title in purchasing the tax title from Intersate Bond Company if there was any evidence of collusion between her and her mother, are good. Relatively to these assignments, the court fully charged on the subject of burden of proof, and on proof of fraud. This portion of the court's charge is not inconsistent with the instructions on burden of proof and proof of fraud. It did not withdraw the charge formerly given on these subjects. Construing the excerpt complained of with the entire charge, and in the light of the pleadings and the evidence, it can not be held to be reversible error, though perhaps slightly inaccurate.

■ Error is assigned in grounds 12 and 13 on the following portion of the charge: "This suit is based by the plaintiff against the defendants on conspiracy or collusion; and I charge you that as a rule evidence of fraud may be established by circumstances as well as by positive proof. Being of a peculiarly subtle nature, slight circumstances may be sufficient to establish it, and particularly is this true in transactions between members of the same family, closely related. Thus where two or more persons are charged with conspiracy, or entering into a mutual scheme to defraud, such conspiracy or scheme may be shown by proof of facts evidencing concurrent knowledge and approbation, in the persons conspiring, of each others' acts, there being approbation of the separate acts of such persons or their duly authorized representatives, directed to the same purpose, or in the particulars urged." The vice urged against this instruction is that it is an incorrect statement of the law, and not adjusted to the pleadings or evidence. To this contention we are unable to agree. It is almost in the identical language of a part of the second headnote of the opinion in *Holbert* v. *Allred,* supra. The charge was not erroneous.

■ Error is assigned on the failure of the court to charge the jury on the contention of Miss Horton that there was no fraud or

collusion between her and her mother, Mrs. Smith, by which she was to acquire the tax title to the property here involved from Interstate Bond Company, and that if Miss Horton paid her own money for the option to purchase the tax title to the property and exercised the same by tendering her own money to acquire title in her own name and for her own benefit, and not for the benefit of Mrs. Smith, the jury should find in her favor. The court fully instructed the jury on the question of fraud. If Miss Horton had desired more specific instructions with reference to her contentions, she should have presented a timely request in writing therefor. *Ga. & Fla. R. Co.* v. *Tapley,* 144 *Ga.* 453 (2) (87 S. E. 473) ; *Bray* v. *C. I. T. Corporation,* 51 *Ga. App.* 196 (3) (179 S. E. 925), and cit. *Judgment affirmed. All the Justices concur.*

JENKINS, Justice, concurring specially. As I understand the record in this case, there is neither any direct evidence nor any fact or circumstance which in any wise tends to show any fraudulent conspiracy between the mother and daughter, whereby the property would be bought in by the daughter for the benefit of the mother. On the contrary, all the evidence and every fact and circumstance seems to indicate that the property was to be bought in by the daughter for herself and with her own money or on her own credit. Accordingly, it seems that the theory of the petition, that the property was in fact bought in by the mother through this subterfuge under which title was to be taken in the name of the daughter, is in no wise supported by any proved fact or circumstance. As I interpret the law, in the absence of any principle of estoppel, there would be nothing to prevent the daughter from buying in the property for herself, in her own name and on her own credit, so as to obtain a good title thereto free from any previous existing secondary lien, such as the security deed held by the plaintiff and assumed by the mother. This seems to be supported, not only by the clearly enunciated decisions of this court, but by the overwhelming weight of general authority. *Miller* v. *Jennings,* 168 *Ga.* 101 (147 S. E. 32) ; *Edwards* v. *Hall,* 176 *Ga.* 632 (168 S. E. 254) ; *Sweat* v. *Arline,* 186 *Ga.* 460 (197 S. E. 893) ; First National Bank *v.* Douglas County, 124 Wis. 15, 23 (102 N. W. 315) ; Thorington *v.* Montgomery, 88 Ala. 548, 553 (7 So. 363) ; Langley *v.* Batchelder, 69 N. H. 566, 568 (46 Atl. 1085) ; Carter *v.* Bustamente, 59 Miss. 559 ; Nagle *v.* Tieperman, 74 Kan. 32 (85 Pac. 941, 9 L. R.

A. (N. S.) 674) ; Equitable Life Insurance Co. *v.* Wright, 54 Iowa, 606 (7 N. W. 93) ; Wilson *v.* Godfrey, 145 Iowa, 696 (124 N. W. 875) ; 61 C. J. 1200, § 618. This being true, it would seem to be wholly immaterial whether the daughter was seeking to buy in the property on the advice of her mother or her mother's agent. Since such a purchase of the tax title would be altogether legal, it would not seem that there could possibly be any fraud, collusion, or conspiracy in merely inducing the daughter to do that which the law fully authorized. *Miller* v. *Jennings, Edwards* v. *Hall,* supra. In order to constitute a fraudulent or otherwise unlawful conspiracy, the object to be attained must itself be such as the law does not approve, or the method employed by the alleged conspirators must constitute a tort in and of itself. See *Woodruff* v. *Hughes,* 2 *Ga. App.* 361, cited in the majority opinion. In that case it was held that "Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done." In this case, since the alleged purpose sought to be effectuated between the alleged conspirators was one which the law approved as altogether legal, and since there does not appear to be any semblance of evidence that, in effectuating such lawful purpose, any other or different tort against the rights of the plaintiff was committed or contemplated, there remains no room for the application of the rules relating to fraud, conspiracy, and collusion.

The only reason which impels me to concur in the judgment of affirmance does not relate to any of the alleged acts of fraud, collusion, and conspiracy, the existence of which I do not think is shown by the record. It does appear, however, that during the time in which the plaintiff lienholder could have protected her lien by discharging the tax indebtedness, the mother went to the plaintiff's agent and attorney, and asserted her intention to discharge these tax claims, and even went so far as to procure this attorney's assistance in gathering the data from the records in order to effectuate such expressed intention. This evidence was uncontradicted, and was admitted without objection. Manifestly, if the mother had done what she thus expressed her intention to do, the plaintiff would have been protected in her lien without any further action on her part, for the reason that her lien would have become the

first outstanding claim against the property the moment that the mother discharged the tax indebtedness. It would not seem, although it should be conceded that the mother—as might well have been the fact—fully intended to do as she then and there expressed her intention, that the daughter, without any notice from the mother to the plaintiff as to any change in the mother's intention, would be permitted to avail herself of the expressed intentions made by the mother and of the unreported change in the expressed program, where it further appears that the mother and daughter were acting more or less in concert, and the daughter admittedly acted on the advice of the agent for each of them. · While it is true that the principle of estoppel, on which this special concurrence is based, was not pleaded by the plaintiff, the evidence on this subject was not only admitted without objection, but was uncontradicted. As was held by this court in *Rieves* v. *Smith,* 184 *Ga.* 657, 664 (192 S. E. 372), "While 'the general rule is that estoppel, to be relied on, must be pleaded,' . . yet there are well-recognized exceptions to this general rule. Thus, since it is unnecessary under our pleading act to file a replication, 'this rule does not apply where the *plaintiff* relies upon estoppel in order to defeat a defense raised by the defendant in his answer,' and in such a case 'evidence in rebuttal of other evidence [of the defendant] is admissible for the [plaintiff] for the purpose of showing an estoppel, even though estoppel is not pleaded.'" See cases there cited. The rule is different in a case where a defendant claims an estoppel, and "he must have pleaded [the] estoppel, if not expressly, at least by showing [the necessary] facts." *Fulenwider* v. *Fulenwider,* 188 *Ga.* 856 (2, *b*), 863, 864 (5 S. E. 2d, 20). Under this principle of estoppel, it seems that the verdict rendered was not only authorized but demanded.