### 21276.   OXFORD CHEMICAL CORPORATION *et al.* v. DETREX CHEMICAL INDUSTRIES, INC.

ARGUED JUNE 13, 1961—DECIDED JULY 10, 1961.

*Troutman, Sams, Schroder & Lockerman, Harold C. McKenzie, Jr., Cohen & Kohler,* for plaintiffs in error.

*Smith, Swift, Currie, McGhee & Hancock, Charles L. Weltner,* contra.

GRICE, Justice.   This is a suit by an industrial chemical company against a competitor and two of its employees, former employees of the plaintiff, for injunctions forbidding disclosure of trade secrets and other confidential data alleged to have been acquired by such employees while in the service of plaintiff.   Joinder of these defendants is predicated on conspiracy. Upon the overruling of their demurrers to the petition and the grant of interlocutory injunctions against them, the defendants

assigned error. A recital of the petition, demurrers and injunctions, to the extent necessary for our purposes here, follows.

Detrex Chemical Industries, Inc., herein referred to as "the plaintiff," filed suit in the Superior Court of Fulton County, Georgia, against Oxford Chemical Corporation, Ira J. Duncan and Robert B. Preston, herein referred to respectively as "the defendant Oxford," "the defendant Duncan" and "the defendant Preston." In its final form the petition alleged the following: jurisdiction of the defendants; the execution by the defendants Duncan and Preston of separate employment contracts with the plaintiff (copies of which were attached as exhibits); the work performed by the defendant Preston in a stated geographical area while in the employ of the plaintiff; the resignation from the plaintiff of the defendants Preston and Duncan and their present employment by the defendant Oxford in work corresponding to that previously performed for the plaintiff; the reentry of the defendant Oxford in the field of industrial chemicals, the two concerns thus being competitors in the same field; and the constantly changing nature of the plaintiff's research and products, making it unfeasible to acquire patent protection for all of its new developments and its consequent necessity to rely upon its right to trade secrets.

Then, in general terms, the petition alleged the existence of a conspiracy among the three defendants to utilize the plaintiff's trade secrets and formulae and to deprive it of accounts and customers formerly serviced for it by the defendant Preston. The particular acts of each of the defendants which were relied upon to establish the alleged conspiracy were specified. Recital of these will not be made at this point since the paragraphs of the petition containing these alleged acts will be set forth verbatim subsequently in this opinion.

After alleging that unless the defendants are enjoined "from the aforesaid conspiracy," plaintiff would suffer irreparable damage for which it had no adequate remedy at law, the petition prayed for several items of relief, including temporary and permanent injunctions against disclosure or use of any trade secrets, confidential knowledge or data acquired from plaintiff without first obtaining its written consent.

To this petition each of the defendants interposed demurrers as follows: (1) generally, that the petition failed to set out any cause of action; (2) specially, that the petition as a whole was too vague, general and indefinite and did not distinctly set forth any cause of action; (3) specially, that the petition as a whole was multifarious; and (4) other grounds of special demurrer not now insisted upon.

The trial court overruled all of the demurrers. It also temporarily enjoined the defendants Preston and Duncan from disclosing, in violation of the aforesaid employment contracts, any of the trade secrets or other confidential information, knowledge or data concerning the plaintiff's business without its written consent, and also enjoined the defendant Oxford from aiding and abetting in such violations and from using for its own benefit any secret or confidential information, trade secrets or knowledge concerning the business of plaintiff without first obtaining the written consent of plaintiff. Another phase of the injunctive relief has since become moot and, therefore, reference will not be made to it.

Each of the defendants assigned error on the overruling of its general and special demurrers and the grant of the interlocutory injunction.

■ As we view this record, it is necessary only to review the ruling upon the special demurrer as to multifariousness and its controlling effect upon the grant of the injunction. Thus, we do not decide whether the petition alleged that any of the defendants were, until temporarily enjoined, utilizing for the benefit of the defendant Oxford any trade secrets, formulae, methods or other confidential data of the plaintiff.

This attack upon the petition, made by each defendant, is that it "involves matters and causes distinct to the [other] defendants named therein in which this defendant is not in any manner interested or concerned and that the petition is altogether multifarious." This ground of demurrer is based upon *Code* § 3-110 which provides as follows: "Joinder of claims by or against different persons.—Distinct and separate claims of or against different persons shall not be joined in the same action. Where the damage as well as the interest is several, each party injured shall sue separately."

On the other hand, the plaintiff takes the position that, instead of being multifarious, the petition properly joins the three defendants and their acts, thus constituting a conspiracy in an equitable proceeding to enjoin a wrong. Its position is predicated upon cases to be referred to presently and also upon *Code* § 37-1007, which declares that, "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action."

We begin the determination of this issue—whether the petition is void as multifarious or valid as alleging conspiracy— by referring to the allegations themselves. After reciting such matters as the previous employment relationship of the defendants Preston and Duncan with the plaintiff, the duties which these two individuals now perform for the defendant Oxford, and the type of businesses which the plaintiff and the defendant Oxford carry on, the petition makes allegations as to the conspiracy relied upon. In substance, those are as follows:

First, there is the general allegation as to a conspiracy: "12. . . . that Defendants are presently and have been since the employment by [defendant Oxford] of the [defendants Preston and Duncan] engaged in a conspiracy to utilize trade secrets and formulae developed by and owned by petitioner, and to deprive petitioner of its accounts and customers serviced by Defendant Preston during the term of his employment with petitioner."

Immediately following are the allegations relating to the acts of the defendant *Preston*: "13. . . . that Defendant Preston has called upon various customers of petitioner advising them that [defendant Oxford] had for sale products and chemical products similar to and the same as those of [plaintiff]. 14. . . . that during the course of his employment with plaintiff, Defendant [Preston] acquired an extensive knowledge of trade secrets and confidential information and data concerning the business of the plaintiff, together with the processes and procedures employed by the plaintiff in the manufacture of its several products, and that, subsequent to the date of his employment by [defendant Oxford], the said Preston has re-

peatedly and continually, both directly and indirectly, disclosed and used for the benefit of the said [defendant Oxford] such trade secrets, knowledge, and data, in violation of the contract between plaintiff and said Preston, specifically the fourth paragraph thereof, attached hereto as Exhibit 'A.' 15. Defendant Preston has in his possession customer lists, quotations, and specifications acquired by him while employed by Petitioner, which he has failed to return subsequent to the termination of his employment. 16. Defendant Preston has, among others, called upon Buick Division of General Motors at Flint, Michigan, and sold to it a product known as Oxford 40, in replacement of Petitioner's product known as Detrex 37. 17. . . . defendant Preston did, on May 27, 1960, in Wayne County, Michigan, propose to an employee of petitioner, one Wilford H. Ross, Jr., that he turn over to him, Preston, the formula of a product referred to as 'Detrex 547' in return for a consideration which 'would make it worth his while.' "

Appearing next are these allegations specifying the acts of the defendant *Duncan*: "18. Defendant Duncan, while in the employ of petitioner, acted as Senior Research Chemist whose duties included improvement of existing formulae and chemical processes of Petitioner and development of new methods and formulae. As such, Duncan had full, unrestricted access to all trade secrets, formulae, methods, and other confidential data of Petitioner. 19. . . . that Defendant Duncan is utilizing for the benefit of his present employer, the [defendant Oxford], trade secrets and formulae owned by and developed by Petitioner, all in violation of his aforesaid contract. 20. Subsequent to leaving Petitioner's employ, Duncan has supervised the manufacture of a new product of [defendant Oxford] known as Oxford 40, which is in essence the same formula as a product known as Detrex 37, which was developed while Duncan was employed by Petitioner. Further while employed by petitioner, Duncan developed a product known as Detrex 704, which Duncan introduced to Rockwell-Standard Corporation, Newton Galls, Ohio, said concern using such product for five years. After leaving Petitioner's employ, Duncan called upon said concern seeking to sell a product of [defendant Oxford] described by him, Duncan, as comparable to Detrex 704."

Following are the allegations as to the acts of the defendant *Oxford:* '21. . . . [defendant Oxford] is aware of the contract between Plaintiff and the [defendants Preston and Duncan], and is an active participant in the aforesaid conspiracy, and that in the past, it has hired, in addition to the two [defendants Preston and Duncan], one Emery Francis Gravell, Jr., and one Robert H. Christenson, all in and pursuant to an effort of deprive Petitioner of its trade secrets and secret formulae, and of its accounts and existing customers."

The purpose of these allegations is to plead a conspiracy and thus avoid the pitfall of multifariousness. If a conspiracy is pleaded, the petition is not multifarious. *Greer v. Andrew,* 133 Ga. 193 (1), 199 (65 SE 416). See also *Conley v. Buck,* 100 Ga. 187 (28 SE 97).

A conspiracy may be defined as *"a combination* to accomplish an unlawful end, or to accomplish a lawful end by unlawful means." *Luke v. DuPree,* 158 Ga. 590, 596 (124 SE 13). (Emphasis supplied.) For a fuller definition, see *Horton v. Johnson,* 192 Ga. 338, 346 (15 SE2d 605). The conspiracy itself is not the gravamen of the action, but permits recovery against all those who have wronged another. *National Bank of Savannah v. Evans,* 149 Ga. 67 (99 SE 123).

Decisively important here is the requirement that the petition plead the preliminary or evidentiary facts which are relied upon to support the conclusion that such a conspiracy exists. Unless such facts support the conclusion, no conspiracy is pleaded. See, in this connection, *Shingleur & Co. v. Swift,* 110 Ga. 891 (36 SE 222); *Johnson v. Ellington,* 196 Ga. 846 (2, 3) (28 SE2d 114); *Walraven v. Walraven,* 76 Ga. App. 713, 717 (47 SE2d 148); and *City of Atlanta v. Cherry,* 84 Ga. App. 728 (67 SE2d 317).

There is alleged the *conclusion* that conspiracy exists, first in paragraph 12 and later in paragraph 21. But the substantial question is this: Is this conclusion supported by the preliminary or evidentiary facts pleaded elsewhere as to the acts of the parties to the so-called conspiracy?

Since concert of action is the basis of conspiracy, it must be alleged that Preston, Duncan and Oxford aided and abetted

each other, i.e., that all three acted jointly, in unison. The plaintiff must by its allegations tie together all three defendants upon the theory that each has conspired with the other two in violating rights owed the plaintiff.

With these principles fresh in our minds, let us examine the salient allegations made here.

Examining first those allegations pertaining to the defendant *Preston* (paragraphs 13 through 17, quoted, supra), we find no mention that he conspired with, or acted in concert with, or acted jointly with, or acted with the knowledge, consent or direction of the defendants Duncan and Oxford. There is no tie between him and the other two defendants in the acts which he is alleged to have done. There was alleged no plan, scheme, device, or request on the part of the defendants Duncan and Oxford on the one hand, and Preston on the other, that those or any other acts be done. Insofar as this petition alleges, Preston did these things without any such concert of action as is required for conspiracy.

Next, there is no allegation of concert of action in the activities charged (paragraphs 18 through 20, quoted, supra) to the defendant *Duncan*. As with Preston, none of the acts charged to Duncan are alleged to have been done as a part of any conspiracy between Duncan and Oxford and Preston.

Finally, the deficiencies already pointed out as to the allegations concerning Preston and Duncan apply equally to those (paragraph 21, quoted, supra) concerning the defendant *Oxford*. Aside from the conclusion that it was an "active participant in the aforesaid conspiracy," Oxford is alleged to be aware of plaintiff's contracts with Preston and Duncan and to have hired two other named employees in an effort to deprive petitioner of its trade secrets, formulae and customers. The awareness and effort here referred to are that of only *one* defendant—Oxford, not of the three jointly. Significantly, it is not alleged that Oxford requested or sought from Preston and Duncan any secret information, or even that it knew that they had such when it hired them.

There is alleged no such concert of action among the three as would support a conspiracy.

The petition's conclusion of conspiracy not being supported by

allegations of fact, a conspiracy among the three defendants here is not pleaded. *Shingleur & Co. v. Swift,* 110 Ga. 891, supra; *Johnson v. Ellington,* 196 Ga. 846 (3, 4) supra; *Kessler v. Puritan Chemical Co.,* 213 Ga. 845 (102 SE2d 495); *Puritan Chemical Co. v. Crown Chemical Co.,* 214 Ga. 296 (104 SE2d 457); *Walraven v. Walraven,* 76 Ga. App. 713, 717, supra; *City of Atlanta v. Cherry,* 84 Ga. App. 728, supra.

The authorities relied upon by the plaintiff as to joinder are not applicable. In *Aladdin, Inc. v. Krasnoff,* 214 Ga. 519 (105 SE2d 730) and *Kirshbaum v. Jones,* 206 Ga. 192 (56 SE2d 484), there were no special demurrers pointing out the multifariousness, as there is here. Each of those cases was decided upon general demurrer. Neither is support provided by *Code* § 37-1007 or by *Turner v. Security Plumbing Co.,* 165 Ga. 652 (141 SE 651), upon the theory that this is a proceeding in equity, with one common right to be established and therefore joinder is proper. This Code provision relied upon, § 37-1007, and *Code* § 3-110 which prohibits multifariousness, operate in harmony. *White v. North Ga. Elec. Co.,* 128 Ga. 539 (2), 540 (58 SE 33).

The special demurrer of each defendant challenging the petition upon the ground of multifariousness should have been sustained.

■ Accordingly, it was erroneous to grant the injunction. *White v. North Ga. Elec. Co.,* 128 Ga. 539 (3), 544, supra.

■ Having held that the petition was multifarious, we will make no determination, upon this review, of the general demurrers challenging the merits of the plaintiff's causes of action against the several defendants. *Burgin Lumber Co. v. Kirksey,* 203 Ga. 439 (2), 440 (47 SE2d 68). Nor will the rulings on the other special demurrers be considered.

*Judgment reversed. All the Justices concur.*