## 61669. PRESCOTT v. CARITHERS.
## 61670. PHILLIPS v. CARITHERS.

BANKE, Judge.

Appellee Carithers, a building contractor, brought suit against appellants Prescott and Phillips, charging them with conspiracy to defraud him of monies due under a contract with Prescott for the construction of a prefabricated house. The appellants counter-claimed, charging that the appellee had caused them great mental anguish by constructing the house on the wrong property. This appeal follows a verdict in favor of the appellee.

The property on which the house was built belonged to Phillips, who is Prescott's father-in-law. Carithers entered into the contract with Prescott on the strength of Prescott's representation that Phillips was in the process of deeding the property to him and his wife. Carithers testified that a week prior to the commencement of construction, Prescott assured him that the transfer of title had taken place. Construction began on a Monday, with the excavation of the foundation; and, by Friday, the structure had been erected and had been "dried-in," or weather-proofed. The following week, Prescott informed Carithers that he was having difficulty obtaining financing. Carithers contacted the lending institution to see what the problem was and learned that Prescott had no deed. He then contacted Phillips, who told him that the house had been built on a lot which he (Phillips) had intended to keep for himself, rather than on the lot which he had intended to give Prescott. Neither Phillips nor Prescott has paid Carithers anything, either for his labor or for the materials which he purchased in building the house. Prescott has, however, finished the house and moved into it, living there without paying rent to Phillips. There was evidence that Phillips co-signed a note with Prescott and offered his land as security to enable Prescott to obtain the necessary financing to complete the construction. There was also evidence that in completing the work, Prescott used materials which Carithers left at the site when he abandoned the project.

Prior to these events, Prescott and his wife (Phillips' stepdaughter) lived in a trailer on Phillips' property, directly behind his home. In preparation for deeding the Prescotts their own plot of land, Phillips had two plats drawn up simultaneously, both of which

depict a 1.36 rectangular tract laid out within the confines of his property. One of these plats indicates that the Prescotts were to receive the entire tract. The other divides the tract into two lots designated "A" and "B." The house was constructed on lot B; whereas, Phillips maintains it should have been built on lot A. However, it was the plat showing that the entire 1.36-acre tract was to go to the Prescotts which Phillips utilized for the purpose of obtaining mortgage releases on the property.

Neither Phillips nor Prescott suggested to Carithers that there was any problem with the location of the house until after it had been "dried-in," although Prescott admitted that he inspected the construction site on the day that construction began (Monday), and that he saw it again on Tuesday, at which time the foundation had been completed. He testified that he did not say anything to Carithers about the problem at this time because "the land problem as far as I was concerned was between me and Doc [Phillips]." Phillips testified that although the site was visible from his house, he did not see it until Wednesday because he was away from home. He stated that when he realized on Wednesday that the house was being built on the wrong lot, he made no attempt to contact Carithers, although he did mention the problem to a truck driver who was leaving the site and also told Prescott.

Several witnesses, including the appellee, testified that Prescott had reported to them that Phillips had told him (Prescott) that he (Phillips) would show him (Prescott) how to get the house for little or nothing. The appellants objected to this testimony each time it was offered. On appeal, however, they enumerate as error only one of the occasions on which it was admitted, during the testimony of a witness named Brinkley.

The jury found against Prescott in the amount of $25,300 for breach of contract and against both appellants in the amount of $11,725, as punitive damages, and $5,000, as attorney fees, for conspiracy to defraud. On appeal the appellants' primary contention is that the evidence did not establish a prima facie case of conspiracy. *Held:*

1. "Civil conspiracy is an act which is by its very nature covert and clandestine, and usually not susceptible of proof by direct evidence. Concert of action, amounting to conspiracy, may be shown by circumstantial as well as direct evidence. [Cits.]" *Mixon v. Phoenix Landscaping, Inc.,* 136 Ga. App. 344, 345 (221 SE2d 225) (1975). It is not necessary to prove an express agreement or compact among the wrongdoers; their common design may be inferred from the nature of the acts done, the relation between them, their mutual interests in the matter, and other circumstances. *Cook v. Robinson,*

216 Ga. 328 (5) (116 SE2d 742) (1960); *Nottingham v. Wrigley,* 221 Ga. 386, 388 (144 SE2d 749) (1965). "[W]here transactions between relatives are under review, slight circumstances are often sufficient to induce belief on the part of a jury that there was fraud or collusion between the parties." *Bryant v. Dickerson & Adair,* 19 Ga. App. 80, 82 (90 SE 1027) (1917). See also *Horton v. Johnson,* 192 Ga. 338, 346 (15 SE2d 605) (1941); *Nottingham v. Wrigley,* supra, at 388.

There was ample evidence in this case to support the finding of conspiracy. Both appellants were benefited by the construction of the house, Phillips by obtaining an improvement on his land, and Prescott by obtaining a house in which to live. Carithers, of course, was left with no recourse against either Phillips or the property to recover his expenditure of money and labor. By their own admission, both appellants knew where the house was being erected long before they told Carithers that there had been a mistake; in fact, Carithers testified that the alleged mistake was not brought to his attention until he contacted Phillips to find out why the deed had not been executed. Finally, although Prescott told Carithers that he could not obtain a loan to pay for the house, there was evidence that Phillips subsequently assisted him in obtaining a loan to complete the construction. These circumstances are sufficient to charge Phillips with responsibility for Prescott's misrepresentation, prior to the commencement of construction, that the title had already been transferred.

2. In view of the foregoing, the trial court did not err in charging on fraud, conspiracy, and punitive damages.

3. The contention that the trial court erred in charging the jury on the theory of *quantum meruit* is moot, inasmuch as no part of the recovery was based on that theory. However, as previously indicated, it is clear that both appellants benefited from the construction of the house.

4. The admission of Brinkley's testimony that Prescott had told him that Phillips had said he (Prescott) could get the house for nothing was admissible to explain the appellants' conduct (see Code § 38-302), as well as to impeach their testimony that no such comment had been made.

5. The appellants further contend that the court deprived them of an opportunity to rebut Brinkley's testimony because it was initially admitted only for the purpose of impeachment, but later, after both sides had rested, the court ruled that the testimony could also be considered on the issue of whether a conspiracy existed. However, we are offered no suggestion as to what this alleged rebuttal evidence may have been or why it became relevant only after the judge changed his ruling. Thus, the appellants have not carried their

burden of showing harm as well as error. See *Whitby v. Maloy,* 150 Ga. App. 575 (2) (258 SE2d 181) (1979).

6. The trial court did not err in refusing to dismiss the complaint based on the appellee's failure to join his business partner as a party plaintiff. The dismissal motion was not made until the eve of trial. The appellee at first responded by offering to amend the complaint to include the partner as a plaintiff but withdrew the offer when the appellants objected to it.

The appellants contend that the absence of the partner from the proceedings created a fatal deficiency in that, without both partners in the case as plaintiffs, they could not have obtained complete relief on their counterclaims. In view of the fact that the jury found against the appellants on their counterclaims, it is difficult to envision how this deficiency resulted in actual harm. In any event, the responsibility for assembling the proper defendants-in-counterclaim lay with the appellants. It did not behoove the appellee to protect the appellants' interests in this regard. See generally *Co-op Mortg. Inv. Assoc. v. Pendley,* 134 Ga. App. 236 (214 SE2d 572) (1975); Code Ann. § 81A-113 (h).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED APRIL 6, 1981 —
REHEARING DENIED APRIL 24, 1981 —

*Wallace H. Pilcher,* for appellant (case no. 61669).
*Warren D. Evans,* for appellant (case no. 61670).
*M. McNeill Holloway III,* for appellee.
James S. Phillips, *pro se.*

